ARUNAH M. PRIOR vs. CHRISTIAN SWARTZ.

New Haven & Fairfield Cos., April T., 1892. ANDREWS, C. J., CAR-
PENTER, SEYMOUR, TORRANCE and FENN, Js.

A proprietor of lands adjoining navigable waters has a right to build out
   wharves or dig channels from his upland beyond low water mark, so
   long as he does nothing to interfere with the free navigation of the
   waters.
And this right is not affected by the designation of the ground to another
   party as an oyster-bed, under Gen. Statutes, §§ 2348, 2349.

[Argued April 20th—decided June 30th, 1892.]

SUIT for an injunction against the destruction of an oyster-bed of the plaintiff, by the defendant's wharfing out over and digging a channel through it, and for damages; brought to the Superior Court in Fairfield County. Answer by the defendant, and demurrer to a part of the answer. Demurrer overruled, and the case heard on the facts before *Thayer, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiff. The case is fully stated in the opinion.

*J. B. Curtis* and *H. W. R. Hoyt*, for the appellant.

1. The rule of the common law that the proprietorship of the shore, that is, the space between high and low water mark, vested in the crown absolutely for the use of the public, has been somewhat modified by the decisions in Connecticut, and it has been held by the courts of this state that such right in the state is subject to the right of the adjoining proprietors to erect wharves on the space between high and low water mark, provided the same do not interfere with navigation. But in no case has it been decided here that the proprietor of the adjoining upland has a right to build his wharf below low water mark. In *East Haven* v. *Hemingway*, 7 Conn., 202, the judge who gives the opinion of the court cites some dicta from Swift's System, in which it is stated that the owners of land on navigable rivers have the right to the soil as far as they can occupy it, with the exclusive privilege of wharfing and erecting piers in front of their land, so long as they do not impede navigation. But this doctrine was not the decision of the court in the case. That case was ejectment. The demanded premises were the soil, with the wharf and store standing thereon, built between high and low water mark on the east side of Dragon River, and the court held that the owner of the adjoining upland had the right to have them there. The judge, citing Angell on Tide Waters, further says, "that the right of individuals to the use of the soil of the shore, subject to the paramount rights of the public, so far as my information extends, has till now never been questioned." We here see that the judge qualified the doctrine of Swift's System by limiting the right to wharf out to the *shore*, that is, to the space between high and low water mark, so that the case lends no sanction to the doctrine that a proprietor of the upland can go below low water mark. See also to the same effect *Town of Middletown* v. *Sage*, 8 Conn., 221; *Chapman* v. *Kimball*, 9 id., 39; *Nichols* v. *Lewis*, 15 id., 137, 143; *Simons* v. *French*, 25 id., 346, 352; *Welles* v. *Bailey*, 55 id., 316. In the recent case of *Farist Steel Co.* v. *City of Bridgeport*, 60 Conn., 282, SEYMOUR, J., in giving the

opinion of the court, says: "In Connecticut the public is the owner in fee of the flats adjoining navigable waters up to high water mark, such title being vested in the public for the purposes of navigation and commerce. The owner of the adjoining upland has the exclusive privilege of wharfing and erecting stores and piers over and upon such soil, and using it for purposes which do not interfere with navigation." And further on, in giving the reason it is so, he says:—"Because the soil between high and low water mark is held to be *publici juris,* the right of the owner of the adjoining upland is termed a franchise." We here clearly understand that the right to wharf out over flats is so only because such flats are between high and low water mark. It is thus apparent that the courts of this state have nowhere, since the case of *East Haven* v. *Hemingway,* laid down the law that the owners of land adjoining the seashore or an arm of the sea have the right to wharf out beyond low water mark.

2. The right of property in tide waters and in the soil thereof being in the state, and in this state absolutely so below low water mark, any intrusion on the soil of the sea below low water mark would be what is denominated a purpresture, which means any encroachment upon the state either in highways, streets, rivers or harbors. Angell on Tide Waters, 198, 200. In the present case we have a wharf, platform and two channels which are encroachments upon the public territory of the state, being below low water mark and in the navigable waters of the state. The state clearly has the right to remove this wharf and to fill up the channel or compel the defendant to do so, whenever the state shall deem it necessary for the benefit of the public. But prior to the building of the wharf and the digging of these channels the state, by virtue of Gen. Statutes, § 2348, by its committee, designated and set out to the plaintiff the oyster grounds described in the complaint, thereby parting with a portion of its ownership in the soil of the sea and its waters. This leads us to a consideration of the plaintiff's rights under that designation.

3. The right to plant and cultivate oysters in the sea and in arms of the sea is somewhat akin to the right of free fishery. The right of fishery at common law was common to all the subjects of the crown, and this included the right to gather shell fish of all kinds in the sea, ports, bays, harbors and arms of the sea. Angell on Tide Waters, 125. This right of fishery in common was subject nevertheless to the right in the subject of obtaining an exclusive right of fishery either by prescription or grant from parliament. In the case of *Chalker* v. *Dickinson*, 1 Conn., 383, the court says:—" The public may grant an exclusive right of fishery in navigable waters, and if it may be granted it may be prescribed for." This exclusive right of a free fishery for shell fish has been supplemented in modern times with the right not only of exclusively taking shell fish from the bed of the sea and in the harbors, ports and arms of the sea, but in the exclusive right to plant and cultivate such shell fish in certain defined portions of the sea and its arms and harbors, and is only an improved method which civilization has devised to meet the wants of a constantly increasing population, whereby the natural products of the soil of the sea may be greatly increased for the sustenance and luxury of mankind. Judge CARPENTER, in his dissenting opinion in the case of *Town of Clinton* v. *Bacon*, 56 Conn., 520, very justly says:—" Within the last fifty years it has been discovered that Long Island Sound is a field in which a large and important industry may be developed, and it has been the policy of the state to foster it, not by engaging directly in the business but by allotting suitable lots to individuals, thereby encouraging and stimulating private enterprise, by which means a business of immense proportions has been built up." It is found that these oyster grounds were designated to certain applicants for the planting and cultivation of oysters, by a committee of the town of Stamford, within which the grounds are situated, and that the plaintiff acquired title thereto from the applicants. These designations were made under the statutes of this state, now found in sections 2312, 2348 and 2349 of the General Statutes.

Such right to the soil of the sea has been held to constitute ownership. *Town of Clinton* v. *Bacon*, 56 Conn. 517. The plaintiff having acquired title from the state to these oyster grounds, the wharfing out by the defendant below low water mark and the digging of these channels becomes not only a purpresture or an encroachment upon the state, but a tort or trespass upon the plaintiff.

*S. Fessenden*, for the appellee.

SEYMOUR, J. It will not be necessary to state fully the finding in this case in order to understand the points involved.

The defendant, owning land adjoining that part of Long Island Sound known as Stamford Harbor, and within the navigable waters of this state, built a wharf opposite and contiguous to his land from the upland, above high water mark, to low water mark, and thence, below low water mark, out towards the channel of the harbor; and, for the purpose of connecting the end of his wharf with the harbor channel, he dug a channel between the two, also a channel in front of and alongside the end of his wharf.

The wharf was built and the channels were dug to enable steamers and other vessels to receive and discharge passengers and freight to and from the defendant's adjoining upland, and in order that he might use the waters of Long Island Sound opposite and contiguous to his land for the purposes of navigation.

The plaintiff contends that, while it is the law of this state that the owner of the adjoining upland has the exclusive right of access to the water, over and upon the soil between high and low water marks, and the exclusive privilege of wharfing and erecting piers over the same, yet in no case has it been decided, and the law is not so, that he has a right to build his wharf below low water mark.

It is stated in Swift's System, vol. 1, chapter 22, page 341, that " all rivers that are navigable, all navigable arms of the sea, and the ocean itself on our coast, may in a certain sense be considered as common, for all the citizens have a common

right to their navigation. But all adjoining proprietors on navigable rivers and the ocean have a right to the soil covered with water as far as they can occupy it, that is, to the channel, and have the exclusive privilege of wharfing and erecting piers on the front of their land. * * * Nor may adjoining proprietors erect wharves, bridges or dams across navigable rivers so as to obstruct their navigation."

This statement of the law is quoted in the opinion in *East Haven* v. *Hemingway*, 7 Conn., 186, with the suggestion that the court do not understand by it that the adjoining proprietors are seized of the soil covered by water, but that they have a right of occupation, properly termed a franchise. The controversy between the parties regarded the title to the soil, with the wharf and store standing thereon, between high and low water mark on the east side of Dragon River, which is an arm of the sea where the tide ebbs and flows, and was navigable adjoining the premises for large vessels.

That case decided that the proprietor of land adjoining a navigable river has an exclusive right to the soil between high and low water mark, for the purpose of erecting wharves and stores thereon. We do not recall any case in this state in which the precise point made in this case was in issue.

There are, however, expressions in the opinions in several cases which indicate the general views of at least the judges writing the respective opinions. Thus in *Simons* v. *French*, 25 Conn., 345, Judge STORRS says:—"In Connecticut it is now settled * * * that the owner of the upland adjoining such" (adjacent) "flats becomes entitled, by virtue of his ownership of the upland, to the exclusive right of wharfage out over them in front of said upland to the channel of an arm of the sea adjoining such flats."

In *Mather* v. *Chapman*, 40 Conn., 382, the court says:— "It is conceded that by the settled law of Connecticut the title of a riparian proprietor terminates at ordinary high water mark. It is also conceded that, though his title in fee thus terminates, yet he has certain privileges in the adjoining waters. Among the most important of these privi-

leges are—(1) that of access to the deep sea; (2) the right to extend his land into the water by means of wharves, subject to the qualification that he thereby does no injury to the free navigation of the water by the public."

In *State* v. *Sargent*, 45 Conn., 358, the right of owners of land bounded on a harbor to "embark therefrom and go upon the sea," is recognized. And in *New Haven Steamboat Co.* v. *Sargent*, 50 Conn., 199, the right of a party, owner of the upland, to extend his wharf, if he desires, to the channel of the harbor, in that case some nine hundred feet below low water mark, is expressly stated, and the words "deep water" and "channel" are used as synonymous.

Aside from these references, the reason ordinarily stated for giving to riparian proprietors the right of wharfage, to wit, to facilitate commerce and the loading and unloading of ships, together with the common sense of the matter, clearly indicates that the right should not be restricted as claimed by the plaintiff unless there are positive decisions to that effect or imperative reasons for so doing.

If, in view of the opinions already quoted, the question is to be regarded as an open one in this state, we see no good reason why it should not be decided in accordance with the convenience of riparian proprietors, and for the encouragement of commerce, so long as there is no counter-balancing injury involved to others. Except in cases where navigability begins at low water mark, the right to wharf out to low water mark only would be no privilege to adjoining proprietors nor benefit to commerce.

It is significant that the word "wharf," as ordinarily defined, implies a structure in aid of navigation and to which vessels have access. This is well stated in *Landon* v. *Mayor etc., of New York*, 93 N. York, 151, thus:—"A wharf is a structure on the margin of navigable waters, alongside of which vessels can be brought for the sake of being conveniently loaded or unloaded. * * * Hence water of sufficient depth to float vessels is an essential part of every wharf, a necessary incident thereof or appurtenance thereto, without which there can be no wharf and no wharfage. In-

deed a wharf cannot be defined or conceived except in con-
nection with adjacent navigable water."

It seems to us therefore that a proprietor of land adjoin-
ing Stamford Harbor, and waters of a like character in this
state, has a right to connect himself with navigable water
by means of wharves or channels extending from and adja-
cent to his uplands, so long as he does nothing to interfere
with the free navigation of the waters.

The defendant claimed that the legislature had passed an
act, which was recited in the finding, which directly author-
ized the erection of the wharf in question.

The grounds over part of which the wharf was built and
the channels dug, were designated for the planting and cul-
tivation of oysters by a committee of the town of Stamford
in accordance with the statutes.  The plaintiff claimed that
the defendant had no right to wharf out into said grounds
or to dig said channels in the same, the same being situated
below low water mark and within the navigable waters of
this state ; that the plaintiff having acquired his title to the
grounds through original designations of a competent com-
mittee appointed for that purpose, his rights therein could
not be affected by adjoining land-owners, as the rights of
such land-owners, in contemplation of the statute, only extend-
ed to low water mark; that the statute gave the defendant
no right to build a wharf or dig a channel below low water
mark and no right to build any wharf, and that even if it
did it gave him such right only as subservient to the plaint-
iff's right to plant and cultivate oysters, and the right to
build such wharf could be exercised only by obtaining the
plaintiff's consent so to do.

The court ruled adversely to the claims of the plaintiff
and rendered judgment for the defendant.  The view we
have taken of the law makes it unnecessary for us to exam-
ine the act of the legislature referred to.  If, as we hold,
the owner of the uplands in question had a right, as inci-
dent to such ownership, to connect the same by means of
wharves or channels with the navigable water of the harbor,
nothing has been done, so far as appears, to legally de-

prive him of that right, and the designation of the grounds for the planting and cultivation of oysters under the terms of the statute (sections 2348 and 2349 of the General Statutes,) are ineffectual for that purpose.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.