## ROCKY POINT OYSTER CO., Inc., v. STANDARD OIL CO. OF NEW YORK.

(District Court, D. Rhode Island. April 23, 1920.)

No. 1343.

1. **Navigable waters ⬅37(6)—Lease of tidelands for oyster beds subject to state's control in interest of navigation.**

Though a lease, under Gen. Laws R. I. 1909, c. 203, providing for leases of tide-covered lands not within any harbor line for oyster fisheries, is in terms appropriate to an irrevocable grant of a lease-hold estate, and reserves no general right of alteration, it is subject to an implied reservation resulting from the nature of the title of the state to tide-flowed lands as a trustee for the public, and is subject to the continuous control of the state Legislature, acting in the interests of navigation and commerce; and hence, where the state, by Act April 14, 1917 (Laws 1917, c. 1483), established a new harbor line embracing the leased lands, a riparian owner, who, by authority of the harbor commissioners and the Secretary of War, built a wharf over plaintiff's oyster beds to such harbor line, was not liable in trespass.

2. **Statutes ⬅149—State cannot make irrepealable law or contract on governmental subjects.**

There can be no contract or irrepealable law on governmental subjects, as every succeeding Legislature possesses the same power and jurisdiction as its predecessor.

3. **Navigable waters ⬅14(1)—Power to establish harbor lines a continuing power.**

The power of the state, in the interest of commerce and navigation, to establish harbor lines, is a continuing power.

4. **Navigable waters ⬅16—Public entitled to use bed for every purpose in aid of navigation.**

The public right of navigation is the dominant right in navigable waters, and this includes the right to use the bed of the water for every purpose which is an aid to navigation.

5. **Navigable waters ⬅37(1)—Tide-flowed lands subject to legislative regulation as against lessee, licensee, or occupant.**

Whether one using tide-flowed lands for oyster beds is a lessee, a licensee, or a sole occupant, the lands are subject to a continuous public trust, to be administered by the Legislature in accordance with changing requirements and conditions.

6. **Fish ⬅7(2)—Person constructing wharf through oyster grounds liable for negligent performance of work.**

Though the Legislature adopted a new harbor line, embracing tide-flowed lands on which plaintiff had oyster beds, and defendant, a riparian

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

owner, was authorized by the harbor commissioners to construct a wharf to the new harbor line, it was liable for all damage to the part of the leased lands not occupied by it, caused by its negligent performance of the work.

**7. Wharves ⬤⇒7—Provision of permit to build wharf not construed to nullify permit.**

A provision of a permit granted by harbor commissioners for the construction of a wharf to a new harbor line embracing plaintiff's oyster beds, that nothing therein should be construed to impair the legal rights of any person, could not be interpreted to nullify the permit or abridge the paramount right to improve navigation facilities by construction of the wharf.

At Law. Action by the Rocky Point Oyster Company, Incorporated, against the Standard Oil Company of New York. On demurrers to pleas and motions to strike out. Demurrers and motions sustained in part.

William J. Brown, of Providence, R. I., for plaintiff.

Lee, Boss & McCanna, of Providence, R. I., for defendant.

BROWN, District Judge. The plaintiff asserts title and rights of occupancy of tide-flowed lands in Providence river and Narragansett Bay as a private and several oyster fishery for the planting and cultivation of oysters, and charges the defendant with violation of its rights, and with causing damage to its oyster beds and oysters through dredging and other operations, whereby mud, sand, and other substances were discharged over and deposited on plaintiff's oyster beds and oysters.

In the first and third counts of the declaration the plaintiff alleges title under lease for the period of 10 years, at a rental of $10 per acre, from the state of Rhode Island, through shellfish commissioners, bearing date July 7, 1916, at which date the leased lands were outside the harbor line as then established.

The subject of "Private and Several Oyster Fisheries" is dealt with in chapter 203, General Laws of Rhode Island, which provides for leases in the name of the state of certain tide-covered lands "not within any harbor line."

The second and fourth counts allege rights in the tide-covered lands derived from the sole use and occupation thereof.

By act of the General Assembly passed April 14, 1917 (Public Laws of R. I. c. 1483), a new harbor line was established on the easterly side of Providence river, from Kettle Point to Nayatt Point, which brought the plaintiff's oyster beds within the new harbor line.

By various pleas the defendant sets up its ownership of the uplands with riparian rights; that, at the time of the acts complained of plaintiff's oyster beds were wholly within the harbor line, and located between defendant's shore line and the new harbor line; that the defendant obtained authority from the harbor commissioners to build bulkheads, dikes, and seawall, and to dredge; and that its dredging was by authority of the harbor commissioners, and was carried on in a reasonable and proper manner for the purpose of

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

reclamation and improvement of the tide-covered land between its shore and the harbor line. Defendant further alleges that its dredging, filling in, and building were done under authority granted to defendant by the Secretary of War, and that the work was carried on under the supervision and inspection of a United States government representative, and that it was necessary for the enjoyment of the property of the defendant to fill in between its shore and the harbor line, for the purpose of improving navigation and making the location available for vessels to load and unload.

[1] The principal question before us is whether the grant of tide-flowed lands for private oyster fisheries operates as a limitation upon the power of the Legislature to provide for and authorize harbor improvements, which may impair or destroy the private fisheries, and acts as a limitation upon the rights of the riparian owner to wharf out to the harbor line.

It is the plaintiff's contention that it has a grant of an interest in the lands for the period of 10 years, which is a vested right, which cannot be divested by subsequent grants, change of harbor line, or other legislation, but only for breach of the lessee's covenants.

Plaintiff relies upon the form of the instrument, the terms, "The state doth hereby lease, demise, and let unto the lessee," and other terms, which are ordinarily regarded as appropriate to an irrevocable grant of a leasehold estate, and inappropriate to a mere license, revocable at will, and also upon section 19 of chapter 203, General Laws of Rhode Island, which relates to the execution and contents of the lease and to "proper clauses reserving to said commissioners a right to re-enter on behalf of the state and to terminate said lease for breach of any of said covenants" (i. e., the lessee's covenants), and to the fact that the statute provides for no other right of revocation.

But the question cannot be solved merely by an acceptance of the plaintiff's contention that no general right of reservation or alteration is reserved by the statute or by the instrument which evidences the plaintiff's title.

In the leading case of Illinois Central Rd. Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018, the grant was in fee, yet the court said, at page 450 of 146 U. S., at page 117 of 13 Sup. Ct. (36 L. Ed. 1018):

"Treating it as such a conveyance, its validity must be determined by the consideration whether the Legislature was competent to make a grant of the kind."

Though there may be no express reservation in a public grant, yet there are implied reservations resulting from the nature of the title of the state to tide-flowed lands as a trustee for the public.

As was said by the Supreme Court of Rhode Island in Payne & Butler v. Providence Gas Company, 31 R. I. 295, 313, 77 Atl. 145, 152 (Ann. Cas. 1912B, 65), as to the question of constitutionality of the legislation relative to the leasing of oyster grounds in that state:

"A consideration of the subject involves an inquiry into the nature of the right thereby granted. It has been decided that the privilege of locating oyster beds on public lands, and of planting and taking oysters therefrom, is

merely a license which may be revoked at the pleasure of the legislature, and which ceases with the use of the land for that purpose. It is also subject to the public's right of navigation and of fishery, and if it interferes therewith, the oysters or clams, etc., may be removed as a nuisance."

A decision that there are no restrictions or limitations of the plaintiff's rights, other than those expressly set forth in the lease, and that the statute of the state authorizes such a grant, would at once give rise to serious doubt of the constitutionality of that statute; a doubt which is avoided by the application of the rule that both the statute and the grant made thereunder are to be read as subject to the dominant rights of the public and to the continuous control of the state Legislature, acting in the interests of public navigation and commerce.

"The soil under navigable waters being held by the people of the state in trust for the common use and as a portion of their inherent sovereignty, any act of legislation concerning their use affects the public welfare. It is, therefore, appropriately within the exercise of the police power of the state." Illinois Central Rd. Co. v. Illinois, 146 U. S. 387, 459, 460, 13 Sup. Ct. 110, 120 (36 L. Ed. 1018).

[2] There can be no contract and no irrepealable law on governmental subjects; every succeeding Legislature possesses the same jurisdiction and power as its predecessor.

"The Legislature could not give away nor sell the discretion of its successors in respect to matters, the government of which, from the very nature of things, must vary with varying circumstances. The legislation which may be needed one day for the harbor may be different from the legislation that may be required at another day. Every Legislature must, at the time of its existence, exercise the power of the state in the execution of the trust devolved upon it."

[3] The power of the state in the interest of commerce and navigation to establish harbor lines is a continuing power, as continuing as the commerce which it is to regulate. 22 Op. Atty. Gen. 501.

[4] The public right of navigation is the dominant right in navigable waters, and this includes the right to use the bed of the water for every purpose which is an aid to navigation. Lewis Blue Point Oyster Co. v. Briggs, 229 U. S. 82, 33 Sup. Ct. 679, 57 L. Ed. 1083, Ann. Cas. 1915A, 232.

In Darling v. City of Newport News, 249 U. S. 540, 39 Sup. Ct. 371, 63 L. Ed. 759, it was said:

"But we agree with the court below that when land is let under the water of Hampton Roads, even though let for oyster beds, the lessee must be held to take the risk of the pollution of the water. It cannot be supposed that for a dollar an acre, the rent mentioned in the Code, or whatever other sum the plaintiff paid, he acquired a property superior to that risk, or that by the mere making of the lease, the state contracted, if it could, against using its legislative power to sanction one of the very most important public uses of water already partly polluted, and in the vicinity of half a dozen cities and towns to which that water obviously furnished the natural place of discharge. See Illinois Central R. R. Co. v. Illinois, 146 U. S. 387 [13 Sup. Ct. 110, 36 L. Ed. 1018]; Trimble v. Seattle, 231 U. S. 683 [34 Sup. Ct. 218, 58 L. Ed. 435]."

See, also, U. S. v. Cress, 243 U. S. 316, 320, 321, 37 Sup. Ct. 380, 61 L. Ed. 746.

The plaintiff cites Monongahela Navigation Co. v. U. S., 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463, in support of its contention for vested and irrevocable rights. This case was commented upon and distinguished from other cases in Greenleaf Lumber Co. v. Garrison, 237 U. S. 251, 263, 266, 35 Sup. Ct. 551, 59 L. Ed. 939, and in Louisville Bridge Co. v. U. S., 242 U. S. 409, 421, 423, 37 Sup. Ct. 158, 61 L. Ed. 395. It does not support the plaintiff's contention as to the nature of a lease of oyster grounds.

[5] The plaintiff also relies upon the distinction between leases and licenses to avoid the application to the present case of authorities cited by the defendant; but whether the holding is as lessee or as licensee, or as sole occupant, the principle that the tide-flowed lands are subject to a continuous public trust, to be administered by the Legislature in accordance with changing requirements and conditions, seems to be recognized as equally applicable.

The plaintiff cites Rhode Island cases, J. S. Thornton Co. v. Smith Grant & Co., 10 R. I. 477, 14 Am. Rep. 701; Engs v. Peckham, 11 R. I. 210, 213; Bailey v. Burgess, 11 R. I. 330; Gerhard v. Bridge Commissioners, 15 R. I. 334, 5 Atl. 199; Clark v. City of Providence, 16 R. I. 337, 15 Atl. 763, 1 L. R. A. 725; Carr v. Carpenter, 22 R. I. 528, 48 Atl. 805, 53 L. R. A. 333; Payne & Butler v. Providence Gas Co., 31 R. I. 295, 77 Atl. 201, Ann. Cas. 1912B, 181; Narragansett Real Estate Co. v. Mackenzie, 34 R. I. 125, 82 Atl. 804; R. I. Motor Co. v. Providence, 55 Atl. 696; also General Laws, R. I., ch. 144, sec. 12; and, among other cases, Prior v. Swartz, 62 Conn. 132, 25 Atl. 398, 18 L. R. A. 668, 36 Am. St. Rep. 333; Tinicum Fishing Co. v. Carter, 61 Pa. 21, 100 Am. Dec. 597; Newport News Shipbuilding Co. v. Jones, 105 Va. 503, 54 S. E. 314, 6 L. R. A. (N. S.) 247.

I am of the opinion, therefore, that the defendant had the right, as riparian owner, and by authority of the harbor commissioners and the Secretary of War, to wharf out over the oyster lands of the defendant to the new harbor line, and thereby to exclude the plaintiff from such part of its leased oyster grounds as were within the location approved by the harbor commissioners. For any damage to the plaintiff resulting from defendant's occupation, and from doing the work of reclamation and improvement in a reasonable and proper manner, the plaintiff has no right of action.

The third and fourth counts are in trespass, and allege an unlawful entry upon plaintiff's premises. The pleas to these counts allege matter in justification of the entry, and are not demurrable on the ground that the plaintiff's right could not be affected by the change of harbor line, and by the authority from the harbor commissioners therein set forth. There is, however, an unnecessary duplication and multiplication of pleas to each of these counts, and this should be corrected, either by withdrawal of superfluous pleas or by motion to strike out.

[6] The first and second counts are in trespass on the case, and allege damage to the plaintiff from the negligent performance of the work.

The plaintiff under these counts may prove that it has sustained damage by reason of the fact that the defendant has not done its work in a reasonable and proper manner, and in accordance with the authority granted by the harbor commissioners.

The establishment of the new harbor line did not in itself divest the plaintiff of all its rights, though it subjected it to the paramount right of the defendant to wharf out to the harbor line, and made all damage necessarily incident to the proper performance of that work damnum absque injuria.

The plaintiff contends, however, that even if the defendant had the right and proper authority to occupy portions of its oyster grounds, and to do the work incident to such occupation, it would still be liable for any damages to the remainder of the leased lands, through negligent performance by the defendant of the work. This contention seems sound.

[7] The plaintiff puts undue stress upon words contained in the permit granted by the harbor commissioners:

"Nothing in this consent shall be construed to impair the legal rights of any person."

This, of course, cannot be interpreted to nullify the permit or to abridge the paramount right to improve navigation facilities by wharfing out. See chapter 144, § 12, General Laws of R. I.

The plaintiff contends that the alleged variance of the plaintiff's corporate name, and the alleged irregularities in the advertisements preceding the grant of the lease, are immaterial. So far as I am able to judge from the very brief discussion of these points, that contention is sound.

In this case there have been filed 34 pleas, with a large number of demurrers and motions to strike out. It is apparent that the pleadings are unnecessarily complicated, and that there is much duplication. I have endeavored to dispose of the principal points briefed, and trust that counsel, who evidently are of the opinion that the points which they have discussed are properly applicable to their respective pleas, demurrers, replications, and motions to strike out, will be able to draft an order making such application, and also will be able to so reduce the pleadings as to make it practical to present to a jury the comparatively few substantial questions involved in the case.

The defendant, who seems to have prevailed upon the main contention in the case, may file such draft order within 10 days, and the plaintiff may file corrections thereof within 10 days thereafter.