THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY vs. GEORGE M. LONG ET AL.

\* Third Judicial District, Bridgeport, April Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Counsel are entitled to have their claims of law stated in the finding substantially as made upon the trial, provided a proper request for such a finding is duly filed.

---

\* Transferred from second judicial district.

New York, N. H. &'H. R. Co. *v.* Long.

In the exercise of his property rights, the owner of land abutting on navigable water may lawfully build a wharf to the channel, unless restrained by peculiar conditions of navigation or by public regulations.

The unlawful erection or extension of a wharf which obstructs navigation may be enjoined or abated as a public nuisance, on the application of the State or of an individual who suffers a special injury therefrom. But if the structure itself is lawful as a wharf and the injury or nuisance arises from acts of its owner excluding the public from their right to its use, the injunction must be sought upon that ground and not upon the ground that the wharf is an obstruction to public navigation; the two causes of action being distinct and even antagonistic in character.

The plaintiff sought to restrain the defendants from extending their wharf parallel with and adjacent to its pier, alleging that such extension would obstruct navigation and prevent vessels from reaching that side or face of the plaintiff's wharf, to its great loss and damage. The defendants denied these allegations and averred in connection therewith, that they were owners of the upland and of a small wharf thereon, and as such riparian owners had the right to build the extension complained of. The plaintiff denied this averment. Upon the trial the court found that the existing wharf of the defendants was at the foot of a public street, and that such structure and any extension of it must remain a public wharf or landing place; and, inasmuch as the defendants threatened and intended to use the extension for their private use exclusively, granted an injunction to prevent its erection. *Held* that these facts were outside the issue and could not justify the judgment rendered.

Argued April 25th—decided June 1st, 1899.

SUIT for an injunction to restrain the defendants from wharfing out so as. to obstruct navigation and impair the usefulness of the plaintiff's pier, brought to the Superior Court in New London County and tried to the court, *Roraback, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants for alleged errors in the rulings and findings of the court. *Error and judgment reversed.*

The plaintiff owns a piece of upland on the Thames river or New London harbor, with a wharf extending therefrom within the lines of its riparian easement easterly towards the channel. The easterly end or front of the wharf is upon the channel; the southerly side of the wharf is upon the open water; the northerly side of the wharf is within about a foot of the wharfing easement, and is bounded for about seventy-

eight feet from the upland by an adjoining wharf, the fee of which is owned by the city of New London, and bounded beyond that by the waters of a basin or dock. Northerly of the wharf of the city is a ferry slip used for the Groton ferry, under authority of the city of New London. The dock bounding the northerly side of the plaintiff's wharf is formed by that wharf and the southerly fence of the ferry slip. The map on this page sufficiently illustrates the situation. A represents the plaintiff's wharf; C and D the city wharf; B the dock bounded northerly by the ferry slip and southerly by the plaintiff's wharf.

**A** Wharf of plaintiff; **B** Dock formed by plaintiff's wharf and ferry slip; **C** Wharf built by ferry company, under authority of city in 1892; **D** Wharf built by city in 1894, and leased to defendants in 1898.

The complaint alleges that the plaintiff uses its wharf for the mooring of vessels belonging to itself and others, in connection with its business as a common carrier of goods and passengers, and that the northerly side of the wharf bounded on said dock is of great value to the plaintiff in its business. Paragraph 5 of the complaint alleges that " the defendants threatened to build and have begun to build, by driving piles

and by covering the same with planks and timbers a permanent structure over and across said basin, in such a manner as to appropriate the same to their own private use, in connection with their private business as dealers in fish, and so as to obstruct the plaintiff in its use of said basin, and such other persons as may have occasion to reach the plaintiff's said pier in vessels, and in such manner as to obstruct and prevent the access of such vessels to the northerly face of said pier and to deprive the plaintiff of its rights as an abutting owner upon such navigable waters." Paragraph 6 alleges that such use of said basin will interfere with the business of the plaintiff at its said pier and reduce its value to the plaintiff as well as its market value. The prayer for relief is " an injunction restraining the defendants from placing any piles, planks or timbers in said basin, and from filling in said basin in whole or in part, and from making any erection or structure therein, and from covering over said basin, and from in any way obstructing the use of the same for the purposes of navigation or so as to prevent the access of vessels to the northerly part of the land or pier of the plaintiff."

The material portion of the answer denies the allegations of paragraph 5, alleging, in connection with the denial, that " the defendants before this action was begun were and still are in possession of the upland and shore and a wharf structure extending a little from said upland and shore at the place in question, and next north of the property described in the complaint as the plaintiff's property, having and holding such possession under a claim of title thereto and ownership thereof, and in fact owning the same, together with the right to fill in and wharf out from said upland and shore, and all other rights, privileges and estates appertaining and belonging to the ownership and possession of said property; and the acts, matters and things complained of as threatened and intended by the defendants, are confined to said property and in extension of the existing wharf and in exercise of their right as such owners to fill in and wharf out from the shore and upland so owned and possessed by them towards, but not fully out to, the harbor and wharf lines already established and existing, and as occupied by the plaintiff." The defendants

also repeated the allegation of this possession of the upland with the right to wharf out, by way of a second defense.

The plaintiff demurred to the second defense, because it involved an admission that the defendants intended to build a structure in the basin so as to appropriate it to their private use and to obstruct the plaintiff in its use of the basin and prevent the access of vessels to the northerly face of the plaintiff's wharf. This demurrer was overruled, on the ground that the allegations, if sustained, would constitute a good defense.

Upon the evidence the trial court found that " there is a public highway leading to and connected with the place where the defendants intend to fill in and wharf out, and there has been and now is a public landing at this point; that the defendants have no such title and interest in and to the upland and shore as to give them the right to fill in and wharf out at this place. The issues are therefore found for the plain·tiff." Thereupon judgment was rendered for a permanent injunction in the very words of the injunction asked in the prayer for relief.

The record, in pursuance of the statute, specially sets forth the facts on which this judgment is founded. These facts are substantially as follows :—

The plaintiff corporation owns and operates a railroad in the city of New London, occupying with its passenger station and tracks the easterly portion of a piece of land extending westerly from Thames river, now known as State street or the Parade, and formerly known as the " Fort Land," and as " Market Square."

· The plaintiff also owns and has owned for more than thirty years the upland on Thames river and the wharf structure described in the complaint (indicated on the map as A) ; said structure is for the most part filled land, and consists in part of piling. It is used for mooring vessels, as a landing place for steamboats, and for receiving and discharging freight in connection with the plaintiff's business as a common carrier.

In 1892 a wharf was built under authority from the city of New London adjoining the plaintiff's wharf on the north and extending easterly from the upland about thirty-eight feet (indicated on the map by C). In 1894 the city built another

wharf, being an extension of the last mentioned wharf, about forty feet further easterly and adjoining the plaintiff's wharf (indicated on the map by D).

In 1898, and prior to the commencement of this action, the city of New London leased for a term of ten years, to the defendants, "all the right, title and interest of the said city in and to a lot of land, with all its riparian, water and other rights pertaining thereto, lying and situated " (describing the last mentioned wharf, indicated on the map by D), " together with the right for the necessary piling, dredging, floats, stages, fish cars and other appliances necessary and usual for the purpose of maintaining a fish market upon said leased premises in as ample a manner as said city could do." The lease contained the usual covenants, and the following: " It is mutually understood and agreed that the lessor is not to be liable for any repairs, alterations, changes or betterments; and that in case the lessee shall be evicted from the premises leased, by a judgment of any competent tribunal that the lessor has no right to lease the premises as aforesaid, this lease shall then become from the date of such judgment void and of no effect, and that neither party thereto shall be obligated by any of its provisions from and after the date of said judgment."

Three or four days after the execution of the lease this action was commenced, and subsequently the defendants took possession of the leased premises and placed a building thereon for use in their private business as a fish market.

The defendants threaten to build a private wharf for use in their business as aforesaid, extending easterly from the wharf upon which said building is located and upon and at the foot of the public way (hereafter mentioned) into the above described basin situated next northerly to the plaintiff's wharf, and by said wharf and building to fill in said basin in such a manner as to effectually obstruct, hinder and prevent the public from navigating said basin, and from landing at and upon the foot of said public way and the Parade.

Said private wharf so threatened will, if constructed, prevent the plaintiff from using the north face of its wharf and

prevent access by water to the northerly face of said wharf, and will materially diminish the value of the plaintiff's said property by obstructing the access to one side thereof to and from the public navigable waters of said Thames river.

The upland from which the wharf leased to the defendants extends, is part of a tract of land, of irregular form, lying upon the bank of the Thames river for about 360 feet and extending thence westerly; the northerly and southerly boundaries of this tract are about 315 feet, and the westerly boundary about 194 feet.

This tract of land, known at different times as "Fort Land," "Market Place," "State street," "the Parade," at and from the settlement of New London was, and has been, reserved from particular and individual sale and allotment.

Upon the easterly and water front of said Parade, the town, until the incorporation of the city of New London, and afterwards the city, has from time to time built and extended and changed wharf structures, and has established and changed the location of ferries from time to time and from place to place.

The wharf structure so leased by the city to the defendants was one of such wharf structures, and was built and extended by the city at different dates.

On August 13th, 1784, the court of common council of the city of New London passed the following vote: "Voted: — To lay out as a highway the land lying within the following limits, namely:" (describing substantially the limits of the land now known as the Parade). The city was incorporated in 1784, holding its first city meeting in March. The mayor, aldermen and councilmen were authorized to lay out new highways, "taking the same measures in all respects as are directed by the laws of this State to be taken in the case of highways laid out by the selectmen for the use of their towns." The city limits extended across the Thames river, and the court of common council were empowered to make by-laws "relative to their wharves." This vote was the only action taken to lay out said highway.

A number of business buildings have been erected, either

by the city, or by private individuals under a lease of the ground to them from the city; and such ground and buildings have been leased to private individuals; and market business—both flesh and fish—has been carried on therein, beginning as early as 1785 and continuing until recent years; and such buildings have been located at various times at various places on the said Parade. Hay scales were located thereon as early as 1785, and shops for various kinds of business, including a shoe shop in 1785, a hatter's shop in 1785, a saddler's shop in 1788, and an oyster house in 1824.

From time to time the city appointed a clerk of the flesh and fish markets, and collected the rentals, and kept the oversight of the buildings and of the markets and other buildings, which they leased to private individuals.

In 1850 the city granted to the New Haven and New London Railroad Company the right to construct their road upon and across the Parade, and to build a depot thereon. That depot was located at one place upon the Parade, and afterwards changed by agreement between the railroad and the city to another locality upon the Parade.

In 1860 the New Haven, New London and Stonington Railroad Company was granted, by the city, the privilege of occupying part of the Parade for railroad and ferry purposes.

In pursuance of an Act of the legislature for the establishment of a union depot at New London, and upon application of this plaintiff and the New London Northern Railroad Company, the whole eastern end of the Parade or State street was condemned and taken for railroad purposes by an order of the railroad commissioners passed July 7th, 1885. The southerly boundary of the land so condemned is the southerly boundary of the Parade or State street (as shown on the map), and the line of this southerly boundary extended is substantially the northerly boundary of the plaintiff's said wharf and riparian right. The easterly boundary of the land so condemned is the sea wall (as shown on the map), which is substantially parallel with the original shore line, and is a retaining wall separating the waters of the Thames river from the upland as now constructed.

The city appealed from this order, and pending the appeal the railroad companies and the city entered into an agreement, dated March 26th, 1886, by which the appeal was withdrawn and all matters in controversy between the parties were amicably settled, in accordance with the following stipulations to which all agreed: "1st. There shall forever be, across the southerly part of the land taken under the Act of 1885 on the foot of State street, a way for the public leading to the ferry, of at least forty-five feet in width. 2d. To avoid any possible questions that might hereafter arise, it is agreed that the railroad companies do not claim any riparian rights under said Act east of the east line of the land now taken by said companies as approved by the railroad commissioners. 3d. That they shall pay as damages for said taking under said Act to the city of New London $15,000 as soon as proceedings are withdrawn."

The wharf built by the ferry company under authority from the city in 1892, and the wharf built by the city in 1894 (indicated by C and D on the map) were, up to the time of this suit, used exclusively as a means of access to and from the ferry and other vessels and the navigable waters of said Thames river, and as a standing or waiting room for passengers, horses and vehicles waiting for said ferry, and as a means of access to and from the wharf of the plaintiff, and as a standing and waiting room for passengers, horses and vehicles, in connection with the use of the plaintiff's wharf, and the excursion and other vessels landing on the northerly side thereof.

From the foregoing facts the trial court drew and found the following conclusions: 1. By the vote of the city council of August 13th, 1784, the land described in the vote was laid out as a public highway; and the "way for the public leading to the ferry of at least 45 feet in width," mentioned in the agreement of March 26th, 1886, forms a portion of the highway so laid out. 2. Said forty-five foot public way abutted and terminated upon the navigable waters of Thames river. 3. The construction of the wharf authorized by the city in 1892 extended said public way into the waters of the

Thames; and the construction of the wharf built by the city in 1894 further extended said public way into the waters of the Thames.   4. Said wharf structures were dedicated to the public for the uses of a highway and public landing place, and were accepted by the public as such.   5. The wharf claimed by the defendants under their lease, on which they have placed their said building, is a public highway terminating in a public landing place, and the place where the defendants threaten and intend to build their said wharf is at the termination of said public highway which abuts upon the navigable waters of the Thames river.

The court held that these facts and conclusions entitled the plaintiff to an injunction against any extension of the existing wharf now occupied by the defendants. ·

The appeal contains thirty-five assignments of error, of which the first two are these: "1. The court erred in ruling and deciding that the plaintiff was entitled to an injunction, and in decreeing and rendering judgment that an injunction should issue on behalf of the plaintiff to prevent the defendants from extending the wharf in question easterly and further towards the channel of New London harbor.   2. The court erred in ruling and deciding that, under the facts and circumstances detailed in the finding, the plaintiff was entitled to an injunction against the defendants to prevent defendants from further extending the wharf structure in question."

Specification of the other assignments of error is unnecessary.

*Henry Stoddard*, for the appellants (defendants).

*George D. Watrous* and *Henry F. Parmelee*, for the appellee (plaintiff).

HAMERSLEY, J.   The first two assignments of error are general; but taken in connection with the claims of law appearing of record in the defendants' request for a finding, which claims the trial judge refused to state in the finding of

the court, we think they are sufficiently specific. Counsel are entitled to have their claims of law, for a proper presentation of which a finding is asked, stated in the finding substantially as made upon the trial. A failure to do this may justify a correction of the finding, or may serve to excuse the general assignment of error that the facts found do not support the judgment rendered.

The material issues in this action are clearly defined and limited by the complaint and answer. They are: 1. A threat by the defendants to create a public nuisance by erecting in navigable waters a structure which will be an unlawful obstruction to navigation. 2. Injury resulting from the nuisance to the plaintiff of a kind peculiar to him and different from that suffered in common with the public.

The court has found the second issue for the plaintiff; but has not, unless by implication, made a finding in respect to the first issue. The claim of the defendants is that the facts which the court has found as the basis of its judgment, justify and legally require a finding of the first issue for the defendants.

The alleged nuisance consists in the extension of an existing wharf within the lines of the wharfing easement. This easement is owned by the city of New London, and the fee of the upland to which the easement is incident is in the city of New London. So far as public rights in navigable waters are affected, it is immaterial whether the city owns this upland solely in its corporate capacity, or as trustee for the inhabitants of New London, or in part as legal custodian of the highways and public places established for the use of those inhabitants; in any event the full ownership and control with all the riparian rights attached to that ownership, is in the city. The city therefore has the right to build the wharf structure.

The lease which the court finds the city has given to the defendants, confers upon them all the powers of the city in respect to this wharf and its extension, for a term of ten years. The defendants, therefore, in building the threatened

wharf, act under authority of the city, the owner of the wharfing easement.

We do not understand these conclusions to be seriously questioned; we do not doubt that they result from the facts found by the court, and we think they are inconsistent with the judgment rendered.

The conclusions of the court that a public highway has been laid out to navigable waters, that the existing wharf at the foot of this highway and any extension of the same must be a public wharf or landing place, and that the defendants threatened to obstruct the use of such public wharf or landing so as to create a public nuisance,—are without the issues raised by the allegations of the complaint and the denials of the answer, and cannot affect the judgment in this action.

The court has failed to distinguish between a public nuisance consisting in an unlawful structure in navigable waters, and a public nuisance consisting in an unlawful use of a lawful structure in such waters. The two are clearly distinct; they depend on different conditions and affect different interests.

Any structure in navigable waters affecting the free passage of vessels is a public nuisance, unless erected in the exercise of rights of private property or in pursuance of public authority. The owner of land abutting on navigable water has authority, in the exercise of rights of property, to build a wharf to the channel, unless restrained by peculiar conditions of navigation or by public regulations. (Such restraints do not affect the present case.) A riparian proprietor whose land is bounded by a navigable stream has certain rights, as such, among which, in the language of MR. JUSTICE MILLER, are " access to the navigable part of the river from the front of his lot, the right to make a landing, wharf or pier for his own use or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public, whatever those rights may be." *Yates* v. *Milwaukee*, 10 Wall. 497, 504. The right is, to build a structure in the water for more convenient access to and from the channel. This structure

is a wharf, pier or landing. Its use may be confined to the owner, or shared with the public; but its use, whether public or private, has no relation to the fact of its being a legal structure; that depends on the ownership of the upland, and is in no way affected by the character of its use as a wharf. The *status* of the wharf as a legal structure is controlled by the ownership of the upland; the right of the owner to exclude the public from its use is controlled by other and different considerations. " Piers or landing places, and even wharves, may be private, . . . or, in other words, the owner may have the right to the exclusive enjoyment of the structure, and to exclude all other persons from its use." The question whether they are so, or are open to public use on payment of reasonable compensation as wharfage, depends in such cases " upon several considerations, involving the purpose for which they were built, the uses to which they have been applied, the place where located, and the nature and character of the structure." *Dutton* v. *Strong*, 1 Black, 23, 32.

But whether the wharf be public or private, the structure is legal if built in pursuance of riparian right. It cannot be abated as a nuisance interfering with free navigation, because of conflicting claims as to its use. Being a public wharf, the owner or other person may, by placing upon it buildings, or in other ways, so appropriate it to his exclusive use as to obstruct its use by the public; and these acts may constitute a public nuisance which may be abated or restrained on application of the State, or of an individual who suffers a special or peculiar injury by this exclusion of the public from the use of the wharf. But such nuisance is not an obstruction to the free use of navigable waters; the wharf structure cannot be abated because of such nuisance; and the actual nuisance cannot be restrained at the suit of an individual whose special injury results wholly from the existence of the wharf structure and not at all from its misuse. So in this case, the public who may be entitled to compel these defendants to remove the house now on their wharf and to have them enjoined from obstructing the public in the use of the exist-

ing wharf or any extension thereof, must found the right to such remedy upon the legality of the existing wharf and its extension, and its beneficial use to the public; while the public who may be entitled to have the existing wharf abated as a nuisance in navigable water and the defendants enjoined against its extension, must found the right to such remedy on the illegality of the existing wharf and the injury to the public of its use and extension. It is difficult to fancy two public nuisances more distinct and even antagonistic in their nature than these two, i. e. the one which the plaintiff has alleged in its complaint and the one which the court has found as the basis of its judgment.

The fact that the defendants are guilty of a nuisance in the use of their wharf as found, and intend to use its extension in the same manner, does not authorize the court to abate the existing wharf nor to enjoin its extension; and the fact that this plaintiff may suffer a special injury from the existence and extension of the present wharf, does not entitle it to apply for an injunction against a nuisance consisting in obstructing the public use of the wharf, when he neither alleges nor proves special damage by reason of such nuisance.

These considerations dispose of the case and render it unnecessary to discuss other questions that have been argued. The defendants claim that the conclusions of the court as to the public highway and landing are not supported by the facts found, and that admitted and undisputed facts have been improperly omitted from the finding as drawn. These claims may or may not be true. Some of the deductions of the court may invite argument; and the law in respect to the controlling principle affecting the riparian rights of the owner of the fee and of the public, when a highway adjoins navigable water, is neither clearly defined nor well settled. These questions may affect important interests of the public and of the city of New London, which should not be passed upon incidentally. It is sufficient for the determination of this case that, whether the conclusions of the court as to a highway and public landing

be right or wrong, the facts found by the court demand a denial of the injunction.

There is error and the judgment of the Superior Court is reversed.

In this opinion the other judges concurred.