THE SHOREHAVEN GOLF CLUB, INC., ET AL. *v.* WATER
RESOURCES COMMISSION ET AL.

MANHATTAN SAND COMPANY, INC. *v.* WATER
RESOURCES COMMISSION ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued June 5—decided July 7, 1959

*James M. Desmond* and *Henry P. Bakewell,* for the appellant (plaintiff) in the second case.

*David M. Shea,* with whom, on the brief, were *John M. Bailey* and *Alfred F. Wechsler,* for the appellants (plaintiffs) in the first case.

*Raymond J. Cannon,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellee (defendant commission) in each case.

*Norman K. Parsells,* for the appellees (defendants Smith et al.) in each case.

*Hereward Wake,* for the appellee (defendant Gordan) in each case.

*Stephen Tate* filed a brief as amicus curiae.

BALDWIN, J. The plaintiffs The Shorehaven Golf Club, Inc., and The Covlee Company, both Connecticut corporations in Norwalk, own land on the shore of Long Island Sound, including a large area of salt marsh, known as Great Marsh, which lies partly in the town of Westport and partly in the town of Norwalk. The plaintiff Manhattan Sand Company, Inc., is a New York corporation engaged in dredging sand and gravel for commercial purposes. These three corporations filed an application, under the Removal of Sand and Gravel Act, presently §§ 25-10 to 25-18 of the 1958 Revision, with the defendant water resources commission for the designation of a channel across state-owned lands under tidal and coastal waters of this state in Long Island Sound, to provide deepwater access to the Great Marsh, and for a permit to remove materials in the creation of the proposed channel. The commission held a public hearing, as required by § 25-12, and denied the application. The plaintiffs then appealed to the Superior Court in Hartford County in accordance with § 25-17. Judgments were rendered denying the appeals. The present appeals are from those judgments.

The plaintiffs attached to their application a chart showing the channel which they desired to have designated and from which they desired to remove sand and gravel. The proposed channel extends from a point of access to the Great Marsh across underwater lands of the state in a southeasterly direction to a point in Long Island Sound, directly south of Cockenoe Island in Norwalk Harbor, where the depth of the water varies from thirteen to sixteen feet. Another portion of the channel extends in an easterly direction from the channel hereinbefore described to a point directly north of

Cockenoe Island, where the depth of the water varies from thirteen to fifteen feet. The commission found that the first of these proposed channels was 8500 feet long and 300 feet wide and would be dredged to a depth of 25 feet below mean low water and that the second was 5500 feet long and 300 feet wide and would be dredged to a depth of 25 feet below mean low water. The first crosses, for the greater part of its length, lands plotted as oyster grounds. Rev. 1958, § 26-194. The marsh area which the plaintiffs propose to dredge for a basin for pleasure craft and to improve some of the shore properties of the plaintiff upland owners is approximately 100 acres in extent. The commission further found that the materials excavated would be processed so that large amounts of usable sand and gravel would be obtained for commercial purposes and, specifically, that "this appears to be the main objective of the application." The commission found that the processing of the excavated materials would result "in the discharge of process water containing various amounts of silt, mud, turbidity, etc., into the natural waters of the area." The commission also made findings, attacked by the plaintiff, relating to the effect of the proposed dredging on aquatic life and shore erosion. The view which we take of the case makes it unnecessary to discuss this aspect.

The plaintiffs assert, and we shall assume it to be so, that the application was made primarily under § 25-14 as distinguished from §§ 25-10, 25-11, 25-12 and 25-13. Section 25-14[1] declares that the creation

---

[1] "Sec. 25-14. LAYOUT OF CHANNELS. The creation, widening, deepening or lengthening of channels in, across or upon state lands under tidal and coastal waters is hereby declared to be affected with the public interest. In addition to its other powers and duties and in conformity with the purposes thereof, the [water resources] com-

or improvement of channels on state lands under tidal and coastal waters affects the public interest. The statute empowers the water resources commission, after a public hearing and subject to a permit by the corps of engineers of the United States army, "to designate and lay out channels across state lands under tidal and coastal waters for the purpose of providing access to and from deep water to [adjacent] uplands . . . and for the improvement of coastal and inland navigation by vessels, including small craft for recreational purposes." Section 25-10, on the other hand, authorizes the commission to regulate the taking or removal of sand, gravel and other materials from under such waters, with due regard for the prevention of shore erosion, the protection of shellfish grounds and finfish and wildlife habitats on public lands, the development of adjoining state parks, the creation and improvement of channels and boat basins, the improvement of coastal and inland navigation for vessels, including craft used for recreation, and the improvement or protection of uplands bordering upon state land under tidal and coastal waters. This section enters into the situation because, admittedly, the plaintiff Manhattan Sand Company, Inc., desires to process for commercial purposes a very substantial part of the sand and gravel which would be removed in the dredging, under a permit which the company would obtain in accordance with §§ 25-11 and

mission shall have the power and authority, after a public hearing, subject to the issuance of a permit by the corps of engineers of the United States Army, to designate and lay out channels across state lands under tidal and coastal waters for the purpose of providing access to and from deep water to uplands adjacent to or bordering state lands under tidal and coastal waters and for the improvement of coastal and inland navigation by vessels, including small craft for recreational purposes."

25-12. It would pay for the material in accordance with § 25-13.

The plaintiffs claim that the commission, in denying their application, acted arbitrarily, unreasonably and illegally and, in effect, deprived the plaintiffs in the first case of their rights as littoral landowners. They allege that the commission has misconstrued the statutes and misconceived its powers and duties thereunder.

The owner of land adjoining waters in which the tide ebbs and flows has the exclusive right to dig channels and build wharves from his land to reach deep water, so long as he does not interfere with free navigation. *State* v. *Knowles-Lombard Co.,* 122 Conn. 263, 265, 188 A. 275; *Orange* v. *Resnick,* 94 Conn. 573, 578, 109 A. 864; *Lane* v. *Harbor Commissioners,* 70 Conn. 685, 694, 40 A. 1058; *Prior* v. *Swartz,* 62 Conn. 132, 139, 25 A. 398; *State* v. *Sargent & Co.,* 45 Conn. 358, 373; *East Haven* v. *Hemingway,* 7 Conn. 186, 202; 1 Swift, System, p. 341; Gould, Waters (3d Ed.) § 149; 1 Farnham, Waters & Water Rights, §§ 62, 65. This right partakes of the nature of a franchise and is a species of property separable from the upland and alienable as separated. *State* v. *Knowles-Lombard Co.,* supra; *Simons* v. *French,* 25 Conn. 346, 353. There is no reason why, because of its peculiar nature as property, this right cannot, like any other property right, be made subject to reasonable police regulation in the interest of the public welfare. *Windsor* v. *Whitney,* 95 Conn. 357, 368, 111 A. 354; *State* v. *Hillman,* 110 Conn. 92, 100, 147 A. 294; *State* v. *Kievman,* 116 Conn. 458, 463, 165 A. 601. In fact, the right has been subject to regulation in this state and elsewhere for many years. Rev. 1958, §§ 15-7, 15-20, 15-21; *State* v. *Sargent & Co.,* supra, 374; *Farist Steel Co.* v.

*Bridgeport,* 60 Conn. 278, 284, 22 A. 561; *New York, N.H. & H.R. Co.* v. *Long,* 72 Conn. 10, 21, 43 A. 559; *Cummings* v. *Chicago,* 188 U.S. 410, 427, 23 S. Ct. 472, 47 L. Ed. 525; *South Carolina Highway Department* v. *Barnwell Bros., Inc.,* 303 U.S. 177, 189, 58 S. Ct. 510, 82 L. Ed. 734; 56 Am. Jur. 740, § 289; 1 Farnham, op. cit., § 113b; see *Poneleit* v. *Dudas,* 141 Conn. 413, 417, 106 A.2d 479.

The plaintiffs maintain that the action of the commission is not regulation, but prohibition, of the exercise of their rights as upland owners. It requires no citation of authority to say that regulation may in many instances result in prohibition. The question is whether the result is reached in a reasonable manner and is necessary for the public welfare. The plaintiffs asked for the designation of a specific channel as described in their application. It does not appear that they suggested or sought any alteration of the proposed channel whatsoever. They urged their plan as the only one feasible under all the circumstances. The commission denied it. The commission was not under a duty to make suggested changes or to grant a rehearing for that purpose. *Piccolo* v. *West Haven,* 120 Conn. 449, 454, 181 A. 615. It has not denied the plaintiff upland owners all right of access to deep water. It has simply denied access in the manner suggested in the application. The reason was a cogent one. The plaintiffs' proposal entails an operation which, from its size and scope, appears to be primarily a commercial venture by the plaintiff Manhattan Sand Company, Inc. This venture would have enabled the other plaintiffs to develop their shore properties at a modest cost to them or at no cost at all. The commission could properly conclude that a channel of the proportions proposed was an unreasonable exercise of the rights

of the plaintiff upland owners and would require the taking of unwarranted quantities of state-owned underwater lands for private purposes. It was urged that the width and the depth proposed for the channel were necessary to accommodate the equipment, including dredge, tugs and barges, used in the operation, but it was not shown that the dredging of the marsh and of an adequate channel could not be accomplished in any other way. It is the function of the commission under the standards provided by the act to exercise its sound discretion in the public interest. It is a function of the Superior Court to determine whether the commission has acted illegally or abused the discretion entrusted to it. The court did not err in sustaining the action of the commission.

There is no error.

In this opinion DALY, C. J., KING and MELLITZ, Js., concurred.

MURPHY, J. (concurring). I concur in the opinion in the first case but only concur in the result in the second case. The latter should have been dismissed by the trial court because the plaintiff, the Manhattan Sand Company, Inc., is not an aggrieved party under any rule of law or by any stretch of the imagination. In the Supreme Court of Errors, it is riding on the coattails of the upland owners.