[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
This case involves an appeal by the plaintiffs Louis J. D'Amato, John C. D'Amato, Richard M. Russo, Christopher Russo and Keith Russo thereinafter, referred to collectively as "the plaintiffs" or "the applicants") from a decision of the Town Plan and Zoning Commission of the Town of Orange (hereinafter, referred to as "the Commission") denying their applications to amend the zoning regulations and the zoning map and for a coastal site plan and subdivision approval. The plaintiffs filed the above applications on May 7, and 8, 1991, seeking to develop a 60 acre parcel, called Rolling Hills Estates, into 86 lots with 20 per cent designated as affordable housing pursuant to General Statutes 8-30g.[1]
Public hearings were held on July 2, 10, 17, and 29, 1991, and on October 1, 1991, the Commission denied the applications. General Statutes 8-30g(d) allows an applicant which has had an affordable housing application denied to submit a proposed modification to respond to the Commission's objections. CT Page 1337 The applicants filed this amendment on October 23, 1991 and a public hearing was held on November 21, 1991. The Commission denied the modification on December 3, 1991. The instant appeal was filed returnable January 21, 1992.
 II.
Discussion
General Statutes 8-30g modifies judicial review of land development applications which include a certain percentage of affordable housing. The Commission has, at the outset, argued that the provisions of the Act do not apply to the zone and map change applications as they require legislative action (adoption of a regulation) rather than an administrative action (review of a specific development application such as a site plan, special exception, etc.). This court has recently addressed this issue in TCR New Canaan, Inc. v. Planning Zoning Commission of the Town of Trumbull, 6 Conn. L. Rptr. No. 4, 91 (March 5, 1992) (hereinafter, "TCR"), in which this court ruled that as the statutory language and intent of the legislature was clear, the appeal provisions of the Act applied. This court adopts the rulings set forth in section A 1-6 of that decision.
 B.
In TCR, supra, this court reviewed the test for aggrievement under 8-30g(b) and that analyses is applicable to this case. The statute states that:
 "[a]ny person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . may appeal such "decision pursuant to the procedures of section."
In this case, the plaintiffs introduced a copy of their deed showing that they have owned the subject property since June 1988. (Exhibit A). Certainly under traditional aggrievement rules the plaintiffs would be deemed aggrieved, Bossert Corporation v. Norwalk, 157 Conn. 279, 285 (1968), and as the CT Page 1338 Commission denied this affordable housing application, this court found at trial, and reiterates herein, that the plaintiffs have a specific and legal interest which has been injuriously affected by the Commission's decision and are therefore aggrieved. Walls v. Planning and Zoning Commission, 176 Conn. 475,477-78 (1979).
 C.
1.
In ruling on the applications, the Commission acted in both its legislative and administrative capacities. Generally, a zoning commission acts in its legislative capacity when adopting new regulations or rezoning property. Burnham v. Planning Zoning Commission, 189 Conn. 261, 265 (1983). Courts are not allowed to "substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers." First Hartford Realty Corporation v. Plan Zoning Commission,165 Conn. 533, 540 (1973). "The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution." Id., citing, Cameo Park Homes, Inc. v. Planning Zoning Commission, 150 Conn. 672,677 (1963). Where a zoning authority has stated its reasons . . . the reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. First Hartford Realty Corporation v. Plan Zoning Commission, supra, 543, citing DeMaria v. Planning Zoning Commission,159 Conn. 534, 540 (1970).
In reviewing an administrative decision, the rule in Connecticut is that "where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." DeMaria v. Panning Zoning Commission, supra, 541; Central Bank for Savings v. Planning Zoning Commission,13 Conn. App. 448, 457 (1988). CT Page 1339
2.
General Statutes 8-30g(c) changes the rules. This section states:
 (c) Upon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal is taken in a manner consistent with the evidence in the record before it.
The Legislature has now placed the burden of proof on the commission, and not, as in traditional appeals, on the applicant. Like a traditional appeal, however, the evidence is to be gleaned from the record; the new process is not a trial de novo. The commission is required to cite reasons for its decision and the reasons are to be supported by sufficient evidence. The Commission clearly and appropriately set forth its reasons for denial. (Return Item 78).
3.
 A.
The applicants' proposed zoning amendment would create a Residence 3 District (RES-3 Zone) which would allow CT Page 1340 the construction of a single family home on 7,250 square foot parcels and multiple family dwellings at an overall density of 3 units per acre. (Return Item 12). The zone was designated for parcels 5 acres or more west of Wheelers Farm and Derby Milford Road or for parcels with a portion within 1,000 feet of the Boston Post Road. The parcels had to be served by public water, municipal or state approved private sewerage treatment facilities and any development had to contain restrictions on affordability as set forth in the Act and General Statutes 8-39a. Gross area density was to be calculated as all land area less 50% wetlands. Any area within the coastal area management boundary would be limited to 2 dwellings per acre gross. The proposed maximum cost of an affordable home was $110,000.00 which would allow a person in Orange (which is in the New Haven/Meriden Metropolitan Statistical Area) earning $33,920.00 or 80% of the median income of $42,400.00 to afford a home with a maximum monthly mortgage payment of $848.00. (Return Item 12). According to the applicants, the average lot cost for Orange in 1989-90 was $159,289.00.[2] (Return Item 12). The applicants presented pictures of the proposed 1400-1600 square foot homes together with information on the draft approval from the Department of Environmental Protection ("DEP") for a private sewerage treatment plant and the results of a traffic study. (Return Item 12).
 B.
On October 1, 1991, the Commission denied the applications in a sixteen page written decision. (Return Items 7; 8; 86). It noted, inter alia, that the proposed zoning amendment would allow the construction of 1207 units consisting of 241 affordable and 966 market rate — an increase of 817 units over the presently allowed 390 units or a net increase of 18% of the housing stock in orange. (Return Item 78, p. 3). This amount would, it argued, "dramatically and adversely affect the infrastructure and finances of the town."
The next reason for the denial was related to sewerage disposal. The portion of the proposed zone in the area of plaintiffs' parcel "consists of rock, ledge, steep grades and poor soil conditions." (Return Item 78, p. 3). That area is not served by public sewers. Indeed, Orange has no public sewerage treatment plant and the one area of town, south of the Boston Post Road, that is served by public sewers, is tied into the City of West Haven system. (Return Item 44). The CT Page 1341 remaining part of the town has large lot zoning.[3] The applicants proposed to resolve the sewerage disposal issue by constructing a treatment plant on site that would discharge into the Housatonic River. The Commission was clearly concerned about a zoning regulation that would allow the construction of additional private sewerage treatment plants in this western part of town.
The Commission also noted that the voters of Orange had approved a binding referendum to acquire and renovate 20 former military homes into affordable housing and that it was aware of a project under development in which 30-40 elderly units meeting affordable housing definitions would be constructed. Finally, the Commission stated that it was drafting its own affordable housing regulations. (Return Items 63; 78).
Before further discussing the sewerage disposal issue, the court notes that in addition to the above reasons, the Commission listed other reasons for the denial, including potential traffic problems, miscellaneous planning problems and drafting problems with the proposed regulations. The Commission agreed with comments made by Attorney Austin K. Wolf, representing one of the abutters, that the useable land definition was problematic, that the limitations and restrictions on "multiple dwellings" were imprecise and that several other drafting problems existed. (Return Item 28; see also comments by Town Planner, Roger O'Brien, Return Item 36 and comments of the Valley Regional Planning Agency, Return Item 19). It may well be that these latter reasons would withstand the scrutiny of a section 8-30g(c) review. Certainly acting in a legislative role, the Commission can reasonably be concerned about the layout of its road network. General Statutes 8-2; Burhnam v. Planning Zoning Commission, 189 Conn. 261 (1983). Whether this is sufficient to outweigh the need for affordable housing is another matter. Likewise regulation drafting problems are certainly a proper concern — especially those which apply to buildable land definitions in sensitive areas. General Statutes 8-2. This court need not fully address either of these two reasons because it is the sewerage disposal issue that controls the outcome of this case.
 C.
The Legislature has vested regulatory authority of CT Page 1342 municipal sewerage systems in the local entity known as the Water Pollution Control Authority (hereinafter, "the WPCA"). General Statutes 7-246. The WPCA in Orange is not the defendant Commission, it is a separate municipal agency. See, Wright v. Woodridge Lake Sewer District, 218 Conn. 144, 149
(1991). The WPCA is charged with, inter alia, preparing and periodically updating a water pollution control plan for the town which includes designating and delineating the boundaries of:
 (1) Areas served by any municipal sewerage system; (2) areas where municipal sewerage facilities are planned and the schedule of design and construction anticipated or proposed; (3) areas where sewers are to be avoided; (4) areas served by any community sewerage system not owned by a municipality and (5) areas to be served by any proposed community sewerage system not owned by a municipality. Such plan shall also describe the means by which municipal programs are being carried out to avoid community pollution problems. The authority shall file a copy of the plan and any periodic updates of such plan with the commissioner of environmental protection and shall manage or ensure the effective management of any community sewerage system not owned by a municipality. General Statutes 7-246(b).
Pursuant to this statute, the applicants petitioned the WPCA to designate the proposed development as an area to be served by a community sewerage system not owned by the Town. A community sewerage system is defined, in part, as "a sewerage system serving one or more residences in separate structures which is not connected to a municipal sewerage system," General Statutes 7-245, and is regulated pursuant to General Statutes 7-246f. The WPCA denied the applicants' request by letter dated May 31, 1991. (Return Item 25). (The instant zoning applications were filed May 7, 1991).
The WPCA gave essentially two reasons for the denial: (1) a town decision made in the 1960's and 1970's to avoid public sewers, (the 1985 Comprehensive Plan of Development, CT Page 1343 Return Item 39, pp. 5-3 to 5-5 and the WPCA May, 1977 Facility Plan, Return Item 26) and (2) liability issues as stated by the Department of Environmental Protection. As noted by the Commission in its brief, the plaintiffs have sued the WPCA seeking extraordinary relief in a case now pending in the Milford Superior Court. (Commission's Brief, p. 20; Tab 4, Complaint; Answer).
The instant administrative record is, of course, replete with discussions, comments, and documents concerning the proposed plant. The Town hired its own engineer, Malcolm Pirnie, Inc. to review the specifics of the proposed plant. Many hours were spent at the public hearings on the feasibility, operation, and cost of not only this plant but specific plants throughout the country. (Return Items 68; 69). The Commission was concerned that the applicants had not set aside sufficient funds for the operation; whether the applicants truly appreciated the potential for failure, whether the plant would need a full time operator, etc. As noted, both the applicants and the Town agreed that the Town would be responsible for any failure. (Return Item 132, p. 116). All of the comments and discussion, whether concerning studies by other states (Return Items 24; 68; 131, p. 11-13), nitrogen loading in Long Island Sound (Return Item 131, p. 15), construction and operation costs (Return Item 132, p. 105), actual expenses of the design engineer (Return Item 132, p. 112) and the recognition that fourteen other plants could be built in the proposed zone (Return Item 131, p. 120) are certainly relevant to a zone change proceeding. General Statutes 8-2.
What controls this case, however, is not (at least at this time) the Commission's agreement or disagreement with the proposed community sewerage system. Rather, it is the action of the WPCA in not allowing the area to be served by the system. The Commission cannot approve the zone change, not to mention the subdivision, when the WPCA has denied the applicant the ability to construct the system. This Commission does not have any review authority over the WPCA. A change of a zone, "which is dependent for its proper functioning on action by other agencies . . . and over which the zoning commission has no control cannot be sustained unless . . . the necessary action appears to be a probability." Jarvis Acres, Inc. v. Zoning Commission, 163 Conn. 41, 50 (1972) citing Faubel v. Zoning Commission, 154 Conn. 202, 210-11 (1966). See also, Luery v. Zoning Board, 150 Conn. 136, 145 (1962). CT Page 1344 This is also true with a subdivision approval. Carpenter v. Planning Zoning Commission, 176 Conn. 581, 592 (1979). Inasmuch as the WPCA has denied the request for designation, the coordinate agency approval does not appear to be a reasonable probability. Section 30.2d of the proposed zoning amendment requires either "municipal sewers or a state approved sewerage Treatment Facility." Notwithstanding the definitional objections to the proposal, (Return Items 19; 28) and the fact that any condition based on approval by the WPCA would be illegal, adoption of the regulation prior to designation authority by the WPCA is putting the cart before the horse. There can be no community sewerage system unless first approved by the WPCA. See generally, Archambault v. WPCA, 10 Conn. App. 440,446 (1987). Moreover, "[t]he designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." Beit Havurah v. Zoning Board of Appeals,177 Conn. 440, 443 (1979). Before ever approving the amendment, the WPCA would have to act affirmatively on the sewer boundary request.
Finally, it should be noted that General Statutes8-2, as previously mentioned, states in part, that "[s]uch (zoning) regulations shall also encourage the development of housing opportunities for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity." The Legislature obviously recognized that soil conditions differ throughout Connecticut and that regulations suitable for one area might not be suitable for another area.[4]
See, Builders Service Corporation v. Planning Zoning Commission,208 Conn. 267, 305 (1988).
There is clear evidence that the applicants' site has difficult soil conditions. A report from the Town's health department noted that "all of the soil classifications mentioned including the wetland soils are rated as `severe' for on-site subsurface sewerage disposal systems (septic systems)." (Return Item 45).
Accordingly, this court finds that the Commission's denial of the initial applications is supported by the evidence in the record, that the decision is necessary to protect public interests in health and safety and that as the concerns CT Page 1345 are both site specific, Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926 (2nd Cir. 1988) aff'd 488 U.S. 15, reh. den. 488 U.S. 1023 (1988), and plan specific, the interests outweigh the need for affordable housing and the interests can not be protected by a change to the proposed development. General Statutes 8-30g(c)(1)-(4).[5]
 D.
One of the unique aspects of the Act is the ability to file a modified application upon the denial or approval with substantial adverse impact on the viability or degree of affordability of the development. A public hearing may be held and a decision must be made within 45 days of receipt of the modification. General Statutes 8-30g(d). The plaintiffs filed such a request on October 23, 1991, submitting a revision to the zone change application and zoning map.[6] (Return Item 87). No request was made to change the subdivision or the coastal site plan. A public hearing was held on November 21, 1991. (Return Item 134). The applicants modified the district by deleting that portion within 1,000 feet north of the Boston Post Road. The area 1,000 feet south remained, as well as the area west of Wheelers Farm and Derby-Milford Road. Additionally, they eliminated the ability to construct multiple family housing except for duplex construction. (Return Items 87; 134, p. 16). The limitation on the number of duplex units was somewhat vague but at the hearing the applicants indicated it would be one per 15,000 square feet. (Return Item 134, p. 72). A cap was placed on the total number of dwellings (both market rate and affordable)[7] of 175 per school district or 525 units throughout town. (Return Item 87). The applicants adopted the formula presently used by the Commission for determining density by reducing the amount of wetlands to 20%. (Return Items 87; 100, p. 3). The applicants did not substantially modify the sewerage disposal proposal.
On December 3, 1991, the Commission denied the modification. (Return Item 107). At the top of the list of reasons was the concern with sewerage disposal which had not changed in the modification. The amendment did not resolve the underlying issue with the WPCA but rather proposed that "[t]o demonstrate feasibility, for the purpose of establishing this zone, applicable state water criteria for treated discharge must be met." (Return Item 87). The Commission rejected this concept as it recognized that there was no requirements CT Page 1346 for prior approvals. (Return Item 107). This court believes that the applicants' failure to resolve this threshold issue justifies the denial of the modification. The Commission was also concerned with the wording of the modification, especially the lack of clarification on the duplex units. (Return Items 104; 107). As noted by the Commission, the subdivision application did not reflect the changes that the duplex addition could allow. The Commission, for instance, did not know and could not know exactly how many units were being proposed. (Return Item 107). The Commission was also concerned with the 175 unit cap per school district because it was being deprived of the ability to determine the best location for higher density housing. This argument is certainly sound from a planning perspective but perhaps disingenuous in light of present zoning regulations in Orange. The Commission restated its concern with the utilization of slopes of greater than 25% contrary to recommendations of the Town Planner and the Coastal Area Management Unit of the DEP. (Return Items 100; 18). DEP found "34 of the proposed building lots include plans to build or grade slopes greater than 25%." (Return Item 18). The Commission was also dissatisfied with the revision to the open space requirement that deleted a specific percentage as being useable (active). (Return Items 87; 100; 107). In its conclusion, the Commission noted that it had proposed regulations which would promote the construction of affordable housing in areas now served by municipal sewers. (Return Item 107).
It is clear that the Commission was not impressed with the content of both the initial and modified regulations. The situation is similar to that presented in Indian River Associates v. North Branford Planning Zoning Commission, 6 Conn. L. Rptr. No. 13, 372, in which this court upheld a denial of an application to rezone for affordable housing when the proposed application contained substantial inadequacies. As noted therein, "[i]f the applicant has not fully addressed all issues, even after notice, the Commission is certainly not required to approve its proposal." See, generally, Huck v. Inland Wetlands Watercourse Agency, 203 Conn. 525, 553 (1987). Vague regulations containing meaningless standards leading to ambiguous interpretations are impermissible. Barberino Realty Development Corp. v. Planning Zoning Commission, 222 Conn. 607,618-619 (1992). "The commission is not under a duty to make suggested changes. . . ." Shorehaven Golf Club, Inc. v. Water Resources Commission, 146 Conn. 619, 625 (1959). In CT Page 1347 this case, notwithstanding the drafting inadequacies, the sewerage disposal issue precludes a favorable finding for the applicants. The Commission has sustained its burden under General Statutes 8-30g(c) as the reasons for the denial find support in the record, the denial protects substantial interests in health and safety which cannot be protected by changes to this application.
 III.
Conclusion
As the Commission has sustained its burden in this matter, the appeal is dismissed.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT