FRANK T. LANE *vs.* THE BOARD OF HARBOR COMMISSIONERS FOR NEW HAVEN HARBOR.

Third Judicial District, Bridgeport, April Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The privilege or right of wharfing out over tide water flats to navigable water is, at least so far as the same has not been actually exercised, subservient to the public right of navigation.

This privilege of wharfing is given to the owner of the upland to enable him to reach deep water; and if, as in the present case, deep water is brought nearer to him by the excavation of a new inshore channel duly authorized by the Federal and State governments, before he has actually wharfed out, there is no reason why this new channel should not thereafter mark the limit of his wharfing privilege.

In 1892 the board of harbor commissioners for New Haven harbor granted a permit to the plaintiff to extend his wharf about 426 feet, whereupon he did build out about one half the authorized distance, and then stopped. In 1896 the secretary of war and a majority of said harbor commissioners, unknown to the plaintiff, gave other wharf owners permission to dredge a new channel at their own expense nearer the shore in front of their land and that of the plaintiff, and after that channel had been dug the board of harbor commissioners modified the wharfing permit issued to the plaintiff in 1892, and limited his right of extension to the line of the new channel. In an appeal from this action it was *held* : —

1. That the digging of the new channel did not constitute a taking of the plaintiff's land or property which required compensation under the Federal and State constitutions.

2. That the board of harbor commissioners, as agents of the State and in the interest of public navigation, had full power to modify the permit of 1892, and that the manner in which this power was exercised afforded the plaintiff no just ground of complaint.

3. That the plaintiff's right to cultivate oysters upon the soil excavated for the new channel, was held subject to the right of the State and of the United States to cut a channel there if the improvement of navigation required it.

[Argued April 26th—decided July 26th, 1898.]

APPLICATION for relief from an order of the commissioners for New Haven harbor, brought to the Superior Court in New Haven County and tried to the court, *Roraback, J.;*

facts found and judgment rendered confirming said order, and appeal by the applicant for alleged errors in the rulings of the court. *No error.*

The application alleged, in substance, that Lane was the owner of land adjoining the waters of New Haven harbor, and of certain rights to extend wharves in front thereof; that he had in 1892 obtained from said harbor commissioners permission to extend wharves in front of said land nearly to the channel; that he had constructed said wharves in part and desired to complete them; that said board in September, 1896, without notice to him and without compensation made to him, had revoked and modified the permission to wharf out theretofore granted to him, and that he was aggrieved by said action.

The material facts found are these: Lane is the owner of land and of such rights to wharf out in front thereof as belong to littoral proprietors, and also has the right under the statutes of this State to plant and cultivate oysters in front of said land. In 1892 the harbor commissioners granted to him, on his application, the following permit: "Upon application No. 70, permit is hereby granted to Frank T. Lane to construct a pile and timber extension of wharves on his own premises on South Water street. The perpendicular distance from the south line of South Water street to the extreme outer end of said·extension shall be not greater than to the outer end of Geo. H. Smith's wharf already constructed. *No portion of the work shall extend beyond the established harbor line.* This permit is granted upon the express condition that every person acting under the same shall conform to the representations of the application therefor, to the foregoing terms, and to all laws and ordinances applicable to the subject-matter thereof. It may be revoked at any time for a breach of its conditions."

At this time no harbor lines had been established in this part of New Haven harbor. The Smith wharf referred to in the permit extended from high-water mark about 426 feet. Under this permit Lane, in 1892, extended a wharf out for a part of this distance and there stopped. He did nothing

Lane v. Harbor Commissioners.

more under it until after he had notice, in 1896, that it had been modified or revoked as hereinafter stated. The revocation or modification of which he complains was made under the following circumstances : The business done at the various wharves in the vicinity of this part of the harbor necessitates the use of a large number of steamers, schooners, sloops, scows, and other vessels. Up to 1896 public navigation had long " demanded a direct channel extending from these wharves at City Point to the main channel of the harbor, which is located about one mile east " of Lane's property. " Prior to this time those navigating the harbor were obliged to use a very crooked and narrow channel in passing to and from the different wharves, which channel frequently became impassable on account of ice in winter time, and was at no time passable except at certain stages of the tide. Even this crooked channel could not be reached from certain wharves east of said Lane, by vessels drawing over three or four feet of water, and then only at high tide."

In June, 1896, Smith Brothers, a firm who own and use a wharf here, acting for themselves and other adjacent wharf owners, obtained permission from the secretary of war to have the harbor at this place dredged according to a plan or drawing submitted to him. . The application for such permission stated that the dredging was to be done for the purpose of " straightening the ship channel so that vessels belonging to the different parties interested can navigate the channel to better advantage." This permission was granted upon the following conditions : " 1. That this permit shall not authorize any injury to private property, or invasion of private rights. 2. That the material dredged shall be disposed of in accordance with law. 3. That this permit shall expire August 31st, 1896. 4. That the work herein permitted to be done shall be subject to the supervision and approval of the engineer officer of the United States Army in charge of the locality."

Afterwards, on the 18th of August, 1896, Smith Brothers applied to the board of harbor commissioners for New Haven harbor, " for a permit to dredge a channel 60 feet in width

and about 600 feet in length, . . . being the same channel to dredge which permission has already been given by the United States government through the secretary of war on June 1st, 1896." This application was on the 20th of August, 1896, approved and the permit issued, but this was not done at a meeting of the board, nor by a vote of the board. Lane had no notice of the contemplated issue of this permit, and was not heard before said board nor before the commissioners, with reference to its issue, nor had he any opportunity to be so heard. The same is true of the issue of the permit by the United States government.

After these two permits had been issued, Smith Brothers employed a dredging company, which dredged out such new channel. In so doing the dredger destroyed and carried off a few oysters planted by Lane on his oyster ground, together with some of the material placed thereon to harden it.

The new channel is a great benefit to navigation, in no way interferes with Lane's wharf as at present constructed, and "improves his facilities for the enjoyment of the same."

After the new channel had been dug, the board of harbor commissioners, at a meeting held September 2d, 1896, passed the following votes: "Voted, that the permit granted to Smith Bros. Aug. 18th, 1896, by a majority of the harbor commissioners, to dredge a channel 60 feet in width and about 600 feet in length, the same having been approved by the secretary of war June 1st, 1896, is hereby approved by the unanimous vote of this board.

"Whereas, permission has heretofore been given to Frank T. Lane, of New Haven, to extend a wharf on his premises at Oyster Point, so-called, from high-water mark to the harbor line; and whereas said Lane has not up to the date hereof constructed his said wharf to said harbor line, but has constructed a wharf for a portion of the way only; and whereas a channel has recently been dug between said harbor line and the extreme southerly end of Lane's wharf as at present constructed, by permission of the United States government, a map of which channel is now on file in this office: Now therefore, be it voted: That the permit heretofore granted

Lane v. Harbor Commissioners.

to said Lane, to extend his wharf to said harbor line, be and the same is hereby modified and altered so that the said Lane may and shall have permission to wharf out to the northerly line of said channel, but not beyond said line; and any authority or license he may have or claim to have to construct a wharf beyond said line, is hereby revoked."

Lane had no notice of this meeting, and did not attend, but immediately after the passage of these votes a copy of them was left with him. After this Lane drove spiles across the new channel and thereby obstructed its passage. These spiles are not connected with the main land, and serve no purpose save to obstruct navigation.

"The demands of navigation require that said Lane should not extend a wharf beyond the point named in the vote of the board of harbor commissioners on September 2d, 1896, and public convenience and the interests of navigation demand that the order of the board of harbor commissioners be affirmed."

In 1893 the legislature established harbor lines in this part of New Haven harbor, and the harbor line in front of Lane's land is substantially parallel with the shore there, and distant from it about 427 feet. The northerly or inshore line of the newly dredged channel, where it intersects the east boundary line of Lane's land extended southerly, is "about one hundred and eighty-two feet inside of the harbor line" at this point; and all the acts done by the dredging company in making said channel in front of Lane's land, were done within the harbor lines.

No compensation has been made to Lane for digging the channel, nor have any steps been taken to provide such compensation.

On the trial below Lane claimed: 1. That no application in writing was presented to or approved by the board of harbor commissioners, until after the digging of the so-called new channel. 2. The right of an adjoining property owner to wharf out over the tide-water flats, cannot be taken without compensation. 3. The right of an adjacent owner to wharf out over the flats is subject to this reservation, that he

thereby does no injury to the free navigation of the water by the public. 4. A recital in the vote of September 2d, from which this appeal was taken, was not conclusive. This court had full authority to decide the question of fact whether such channel had been legally constructed, and whether Lane's wharf if extended would be an obstruction to navigation. 5. While the State of Connecticut in the exercise of the power of eminent domain could have authorized the taking of this land inside the harbor line for a public channel, the board of harbor commissioners had no such power. 6. The construction of this new channel and the limiting of the right to wharf beyond it, amounted to an establishment of a new harbor line for the said Lane. 7. This matter of authorizing the construction of a channel was a judicial not a ministerial question, as it called upon the board of harbor commissioners to pass upon the question of necessity. 8. That the board of harbor commissioners could not act singly, but could only act at a meeting. 9. That the vote of September 2d, was an attempted ratification by the board of an act already done, without the necessary written notice required by the Act of 1872, and without the necessary lawful authority and approval of the board of harbor commissioners; and that this was done when suit was already pending in relation thereto. Such action could not make legal an act originally unlawful. 10. If the new channel was illegally constructed, then the vote of September 2d was unjust. The board of harbor commissioners attempted to limit the said Lane's right to wharf out, without just cause. 11. That said order should be revoked.

The court overruled the claims set forth in all the foregoing sections, excepting those numbered 3 and 4.

The reasons of appeal are twenty-four in number, all of which, except the third and the last three, relate to the action of the court in overruling Lane's claims.

*Roger S. Baldwin*, with whom was *Henry Stoddard*, for the appellant (plaintiff).

The court erred in ruling that the right of the adjoining

property owner to wharf out over the tide water flats, can be taken to construct a new channel, without compensation, and that the board of harbor commissioners had not the power to authorize the taking of these rights for such purpose. *Farist Steel Co.* v. *Bridgeport*, 60 Conn. 283; *Chamberlain* v. *Hemingway*, 63 id. 8; *Prior* v. *Swartz*, 62 id. 137; *Ladies Seamen's Society* v. *Halstead*, 58 id. 150; 1 Sw. Dig. Chap. 12, p. 109. In determining the character of this franchise, caution must be exercised in construing the decisions of other States, because they are widely diverse, in many cases depending upon statute; whereas in our own State riparian rights spring from the common law of the colony, and long usage. Many States, controlled by the peculiar needs of their own commonwealth, have adopted a less liberal policy toward the shore owner, as in the case of the States of New York and New Jersey. *Shiveley* v. *Bowlby*, 152 U. S. 26. Whenever the riparian owner sees fit to exercise his franchise and wharf across, then the public are thereafter excluded from navigating over this territory and suffer no injury. The point of practical navigability beyond which a wharf will constitute an interference with navigation, is to be determined by considering the character of the commerce carried on in that locality. *Groton* v. *Hurlbut*, 22 Conn. 186; *Illinois Cent. R. Co.* v. *Illinois*, 146 U. S. 445; *Parker* v. *West Coast Packing Co.*, 17 Or. 510; *Norfolk* v. *Cooke*, 27 Gratt. (Va.) 435. This was not merely the exercise of the police power: cutting this channel across these flats was a taking of the property. *Woodruff* v. *Catlin*, 54 Conn. 297; *Brown* v. *United States*, 81 Fed. Rep. 57. The only claim which would justify the digging of this channel across the plaintiff's land was that it was a public necessity. Here there was a judicial question to decide, and the board could only give the written approval prescribed by their charter by passing a vote at a meeting. *Martin* v. *Lemon*, 26 Conn. 194; *Board of Commissioners* v. *Vanderbilt*, 31 N. Y. 265; 2 Cook on Stockholders (3d ed.), § 713. This permit from the United States government is no justification for digging this channel. The national government has not the power

to take the property rights of the plaintiff inside the established harbor line, without paying him for it. *Monongahela Navigation Co.* v. *United States*, 148 U. S. 335, 345; *Brown* v. *United States*, 81 Fed. Rep. 57; *Alex. Ry. Co.* v. *Fanner*, 31 Gratt. (Va.) 765. The character of the proceedings under which this permit was granted, show that it was not intended to confer any rights in property. The construction of this new channel and the limiting of the right to wharf beyond it, amounted to an establishment of a new harbor line for Lane. This the board could not do in the manner attempted by it. *Miller* v. *Mendenhall*, 43 Minn. 101; *Bay City Gas Co.* v. *Industrial Works*, 28 Mich. 184; *Thunder, etc., Co.* v. *Speechly*, 31 id. 344.

*William H. Ely*, for the appellee (defendant).

In this jurisdiction the title to the soil below high-water mark is in the State, and the rights of wharfage which the upland proprietor may have are subject to the rights of navigation. *East Haven* v. *Hemingway*, 7 Conn. 202; *Church* v. *Meeker*, 34 id. 430; *Mather* v. *Chapman*, 40 id. 382. The entire right of the upland proprietor is clearly stated by JUDGE PARDEE in *State* v. *Sargent*, 45 Conn. 372–374. The case of *Farist Steel Co.* v. *Bridgeport*, 60 Conn. 278, does not in any way conflict with the doctrine laid down in *State* v. *Sargent*. It must be manifest, therefore, that the right to wharf out belonging to Mr. Lane, or any other upland proprietor, is a qualified and not an absolute right, and this right of Mr. Lane's has not been interfered with or taken away. Whatever right he had was subject to the right of navigation. This right he has now, but navigation, the court finds, demanded and still demands that he shall not extend his wharf beyond a certain point, and the paramount rights of navigation have been protected by the order of the court. *Stevens* v. *Railroad Co.*, 34 N. J. L. 532. The plaintiff's right to cultivate oysters is also subordinate to the rights of navigation. *Prior* v. *Swartz*, 62 Conn. 132. The acts of the majority of the commissioners, and of the board itself, gave all necessary authority to dig the channel; and whether it

did or not is immaterial, for if the demands of navigation required that Mr. Lane should not extend a wharf beyond the point fixed by the board on September 2d,—and the court finds that it did—the board had a right to pass, and it was their duty to pass, the order appealed from by Mr. Lane. The permit to Mr. Lane was a mere license. *Stevens v. R. Co., supra; Newark Bd. v. Passaic*, 45 N. J. Eq. 397; *Classen v. Chesapeake Co.*, 81 Md. 258; *Girard v. Hughes*, 1 Gill & J. (Md.) 249–265; *Shively v. Bowlby*, 152 U. S. 56. Being a license, and not acted upon, it stands as every other license, and could be limited or revoked at any time without notice or an opportunity to be heard. *St. Louis v. Western Union Tel. Co.*, 149 U. S. 470; *R. Co. v. Baltimore*, 26 Atl. Rep. 510; *Commonwealth v. Kinsly*, 133 Mass. 578; *Calder v. Kirby*, 5 Gray, 597; *Hibbard v. Chicago*, 59 Ill. App. 470; *Eddy v. Granger*, 31. Atl. Rep. 831; *Shively v. Bowlby, supra.* The question of his right to be heard is no longer a question of importance. Gen. Stats. § 3245. In the Superior Court a full hearing was granted him and all his claims were presented before a tribunal which took the place of the harbor commissioners and had the power to confirm, annul or modify any action of said board. The appellant has had his day in court, and the Superior Court has found that navigation demanded the action of the board of harbor commissioners. "The right of appeal being afforded, the plaintiff could not be harmed by any finding the Commissioners should make." *N. Y. & N. E. R. Co.'s Appeal*, 62 Conn. 527–541; *Bletcher v. Ferrar*, 8 Allen, 326. The whole question involved in this case seems to have been discussed and settled by the Supreme Court of New Jersey, where the upland proprietor has the same rights that he possesses in Connecticut. *Stevens v. Paterson, etc., R. Co.*, 34 N. J. L. 545–550.

TORRANCE, J. In 1892 the harbor commissioners gave Mr. Lane a written permit to wharf out over the tide-water flats in front of his upland, for a distance of about 426 feet towards the then only existing channel there. In September, 1896, they by a vote, under the circumstances stated in

the record, revoked that permit in part, and, in effect, limited his right to wharf out, to the new channel made in August, 1896, which was about 200 feet inside of his permit of 1892. In his application to the Superior Court the only thing of which Mr. Lane complains is the passage of this vote. The main question before the trial court, and upon this appeal, is as to the validity of that vote. If, under the circumstances stated in the record, the board had the power to pass this vote, then we think the power was legally and properly exercised, and the judgment of the court below was right.

The determination of this question involves a brief consideration of the rights and powers of the State over these tide-water flats, of the rights of the upland proprietor to wharf out over them, and of the powers conferred upon the harbor commissioners with respect to them.

In our own State it is elementary law: (1) that, subject to the limitations of the Federal Constitution, the State has the *jus publicum*, or right of governing its shores and navigable waters for the protection of public rights, and also the *jus privatum*, or title to the soil itself below high-water mark, in trust for the public use and benefit; (2) that the littoral proprietor owns in fee only to high-water mark, but that he has, in the shore in front of his upland, certain exclusive advantages called in our reports rights, privileges, and franchises, among which is the right of access to actually navigable water by wharfing out; (3) that the right or privilege of wharfing out, certainly so far at least as it has not been actually exercised, is held subordinate and subservient to the public right of navigation.

These statements of the law are supported by the *dicta* and decisions of this court in all the cases upon this subject, from that of *East Haven* v. *Hemingway*, in the 7th Conn., down to that of *Prior* v. *Swartz*, in the 62d Conn.

Over the tide-waters in question, then, the right of public navigation is a dominant right in relation to the unexercised right of wharfing out; and whenever such right to wharf out conflicts with the exercise of this dominant right, the right to wharf out must give way. For the purposes of this

case it is, perhaps, sufficiently accurate to say that the duty of protecting this dominant right rests upon the State and the United States, and consequently the right and power to protect it is in them. *State* v. *Sargent & Co.*, 45 Conn. 358; *Gibson* v. *United States*, 166 U. S. 269.

This power to protect the dominant right, includes not only the power to keep the navigable waters free from encroachments and obstructions, but also the power to improve the navigability of those waters by deepening, straightening or widening old channels, or digging new channels, or otherwise, anywhere below high-water mark, certainly as against the unexercised right to wharf out. *Hollister* v. *Union Co.*, 9 Conn. 436; *Transportation Co.* v. *Chicago*, 99 U. S. 635; *Gibson* v. *United States, supra; Holyoke Water Power Co.* v. *Conn. River Co.* (U. S. Cir. Court), 52 Conn. 570.

This power of the State to protect and improve the navigability of the waters of New Haven harbor, is now vested largely in the board of harbor commissioners for that harbor. *State* v. *Sargent & Co., supra.* By the second section of the Act establishing said board, there is given to it "the general care and supervision of New Haven harbor and its tide-waters, and of all the flats and lands flowed thereby, in order to prevent and remove unauthorized encroachments and causes of every kind which are liable to interfere with the full navigation of said harbor, or in any way injure its channels, or cause any reduction of its tide-waters." By the fourth section it is provided, in substance, that no person shall build over the harbor or tide-waters any bridge, wharf, pier, or dam, or fill any flats, or drive any piles below high-water mark, without a permit from the board, and that all such work shall be done under the supervision of the board. By the sixth section "any erection or work" made within the tide-waters of the harbor without the sanction of the commissioners, where such sanction is required, is declared to be a public nuisance, and the commissioners are empowered to bring suits in the name of the State to prevent such nuisance. Section seven empowers the commissioners to apply to congress "for appropriations for protecting and improv-

ing said harbor." Section eight provides that the expenses incurred by the commissioners shall be paid by the city of New Haven, and further, that "no contracts shall be made, and no acts done by said commissioners, which involve the payment of any money from the treasury of said city, except as herein provided, without an appropriation expressly made for that purpose by the court of common council of said city." 7 Special Laws, p. 287.

Under this Act we think the State has delegated to the harbor commissioners, as its agent, such power as the State itself possesses, not only to protect, but to improve, the navigability of these waters; but the exercise of the power to improve seems to be limited to cases in which valid appropriations have previously been made to the board for improvements, and to cases where private individuals or corporations are willing to make the improvements at their own expense. In numerous instances, as may be seen in the volumes containing our special laws, the State has permitted private individuals and corporations to improve the navigability of its waters at their own expense, and under the Act aforesaid we think the board has the same power. This power would be subject, of course, to the limitations imposed on it by the Constitution and laws of the United States. Subject to those limitations, we think the board had full power to authorize the digging of the new channel, and full power, under the circumstances detailed in the record, to pass the vote of which the appellant complains.

Lane had obtained a permit to wharf out in front of his land for a distance of about four hundred and twenty-six feet. Under that permit he wharfed out forty or fifty feet, and there stopped. This was the condition of his wharf when the new channel was dug in 1896. The northerly or inshore line of the new channel in front of Lane's land, was in the neighborhood of two hundred feet inside of the harbor line and of his permit line, and about two hundred feet outside of his wharf. A portion of the old channel in front of the wharves in this part of the harbor, was shallow, narrow and very crooked, and the demands of public navigation

required that it should be straightened, deepened and widened. The new channel, six hundred feet long and sixty feet wide, running in part over the flats in front of Lane's upland, was made to avoid this narrow, shallow and crooked portion of the old channel, and was in effect simply a straightening and improvement of it for the benefit of navigation. It is found that the new channel greatly improves the navigability of these waters, and that "the demands of public navigation require that it be kept open and unobstructed."

Under the Act of Congress approved July 13th, 1892, entitled "An Act making appropriations for the construction, repair and preservation of certain public works on rivers and harbors, and for other purposes," a part of which is in substance recited in the permit issued by the secretary of war, we think the secretary had power to authorize private individuals to dig this new channel for the benefit of navigation at their own expense.

This new channel was thus made with the sanction and approval of the State and of the United States, through their duly authorized agents, respectively. It was to be made under the supervision of the engineer officer of the United States in charge of this locality, and of the board of harbor commissioners; and for aught that appears of record it was so done. The work was thus done under the authority and supervision of the State and of the United States, and for the purposes of this case must be regarded as having been done by them. The work was done, so far as the present case is concerned, by the private individuals who executed it, in good faith and strictly according to the plan approved by the secretary of war and the board of harbor commissioners.

This new channel, then, was rightfully made across these flats, unless the mere digging of it constituted an invasion of the appellant's rights of property. If it was rightfully dug, we think the board had full power to modify the permit of 1892, and was fully justified in modifying it in the manner set forth in the record. The privilege of wharfing

out is given to the owner of the upland to enable him in that way to reach deep water. When by his wharf he reaches deep water, there is no reason why he should wharf out further; and if, as in this case, before he has wharfed out, deep water is brought nearer to him than it was before, there is no reason why that deep water should not be the limit of his privilege.

The appellant claims that the digging of the new channel constituted a taking of his property, an invasion of his rights, and that neither the State nor the United States could do this, nor authorize it to be done, without condemning that property and making compensation therefor. It is upon this fundamental claim that most of the other claims of the appellant are based. This claim is without foundation. It arises we think from a misapprehension of the exact nature of the unexercised right to wharf out, and of its relations to the dominant right which was exercised in digging the new channel.

So far as the appellant's right to cultivate oysters upon these flats is concerned, he clearly held it subject to the right of any wharf or pier owner to cut a channel through the designated ground in front of such wharf or pier in order to reach deep water; *Prior* v. *Swartz*, 62 Conn. 132; and if this be so, he certainly held that right subject to the right of the State and of the United States to cut a channel here if the improvement of navigation required it. The unexercised right to wharf out he also held subject and subordinate to the dominant right in the United States or the State, or both, to improve the navigability of the waters here. The mere existence of a right to wharf out does not preclude the exercise of the dominant right; and if, in the legitimate exercise of that dominant right, the advantages and privileges of the upland proprietor in or over the flats are diminished or even destroyed, it is *damnum absque injuria*. He held his rights subject to just such a contingency. *Gibson* v. *United States, supra*. In this view of the case, no property of the appellant was taken and no rights of his were invaded, by the mere digging of the new channel. It follows from this

that he was not, as claimed by him, entitled to notice and hearing before the secretary of war and the commissioners, before the permits to dig the new channel were issued; and that so far as he is concerned, and in this proceeding, they were properly issued and fully empowered Smith Brothers to dig the new channel.

Upon the facts found we are of opinion that the vote complained of was a valid vote, and that the court did not err in confirming it.

There is no error.

In this opinion the other judges concurred, except BALDWIN, J.

BALDWIN, J. (concurring in the judgment, but dissenting in part from the opinion). I concur in the opinion of the court that the privilege of wharfing out is given to a littoral proprietor to facilitate his access to deep water, and that when deep water was brought by the newly dug channel nearer to the appellant's upland than it was when his as yet unexercised license to fill upon the flats was originally granted by the board of harbor commissioners, that board had a right to revoke its grant without notice to him, so far as to limit his wharfage rights to the line of that channel; that this limitation took from him no property or vested right; and therefore that no provision for compensation was required.

I do not think it necessary to determine whether the channel was rightfully dug. It seems to me enough that it was dug under color of right. Had it been the work of a waterspout, or a ship driven by a hurricane, the situation would have been the same. The fact of the existence of such a channel made it inexpedient that its navigation should be barred by constructing a wharf across it.

I therefore concur in the judgment; but I do not concur in so much of the opinion as upholds the validity of the permits or licenses from the board of harbor commissioners and the acting secretary of war of the United States, under which

the new channel was dug across the flats.   As to that, grave constitutional questions are involved, which it seems to me unnecessary to decide in order to dispose of the case in hand.