## Edward J. McGibney *v.* The Waucoma Yacht Club, Inc.

Baldwin, C. J., King, Murphy, Shea and Alcorn, Js.

Argued May 3—decided June 19, 1962

*John F. James,* for the appellant (defendant).

*John J. Kinney, Jr.,* with whom, on the brief, was *Frank J. Kinney, Jr.,* for the appellee (plaintiff).

KING, J.   The Quinnipiac River runs in a generally southerly direction through the town of New Haven into New Haven harbor.   The main channel, in the area in question, is in about the middle of the river, which is navigable.   The defendant, for about forty years, has owned land on the westerly bank of the river, abutting, and immediately south of, land which the plaintiff, between 1935 and 1952, leased from Elijah E. Ball and which he purchased from Ball in 1952.   Continuously since 1935, the plaintiff has operated on this property a restaurant known as the "Old Barge."   Increasingly through the years, the restaurant has received patronage from rivercraft.   In 1955, the plaintiff built a small dock which he extended by adding floats until, by 1960, he had a "T" dock on the river in front of his property.   He has rented seasonal mooring space

for ten boats but has maintained one space clear for transient boat trade.

During the ownership of its property, the defendant has operated a yacht club. Its members, since as far back as 1930, usually have owned, and during the season have kept moored in front of or near the defendant's premises, about forty boats of various sizes. In 1960, the defendant erected a string of floating docks, each about fifteen feet long. They were held stationary, end to end, by stakes. The string ran substantially parallel to the shore, was about 112 feet out therefrom, and extended northerly from in front of the defendant's property along nearly the entire frontage of the plaintiff's property. Later on, in 1960, the defendant ran a dock perpendicularly from the shore out to the string of floating docks. The effect of these actions of the defendant was to block direct access from the main channel to the plaintiff's property, completely to block access at low water, and to obscure the view of the plaintiff's dock from boats navigating the main channel. A passage west of the main channel which was occasionally used by boats in going to the plaintiff's dock is completely blocked by the defendant's perpendicular dock.

The plaintiff instituted this action for injunctive relief and damages. The court found a failure of proof as to the amount of damages for lost profits in 1960, but it did grant a permanent injunction restraining the erection or maintenance by the defendant of any docks, piers or other mooring facilities in front of the plaintiff's property. From this judgment, the defendant has appealed.

The defendant included in its answer, the first defense of which amounted to a general denial, a special defense in which it justified its erection of

the floating docks and wharfs by adverse user. The Quinnipiac River, in the area in question, is a navigable waterway in which the tide ebbs and flows. "In Connecticut, the public, whose representative is the State, is the owner of the soil between high and low-water mark upon navigable water where the tide ebbs and flows. The owner of the adjoining upland has certain exclusive yet qualified rights and privileges in the waters and submerged land adjoining his upland. He has the exclusive privilege of wharfing out and erecting piers over and upon such soil and of using it for any purpose which does not interfere with navigation . . . . He also has the right of . . . access by water to and from his upland. . . . However, where a party's upland bordering on navigable waters adjoins and abuts the property of another, each must exercise his respective littoral rights with due regard for the corresponding rights of the other. . . . The right of access is distinct from that which each has as a member of the public . . . [and is the] fundamental riparian right on which all others depend . . . ." *Rochester* v. *Barney,* 117 Conn. 462, 468, 169 A. 45, and cases cited therein; *East Haven* v. *Hemingway,* 7 Conn. 186, 202. Ordinarily, the defendant would have no right, by the erection or maintenance of floats or piers extending in front of the plaintiff's land, to interfere with the plaintiff's right of access and his exclusive right of wharfing out. *State* v. *Sargent & Co.,* 45 Conn. 358, 373; *Rochester* v. *Barney,* supra; *Shorehaven Golf Club, Inc.* v. *Water Resources Commission,* 146 Conn. 619, 624, 153 A.2d 444. Thus, the plaintiff was entitled to prevail unless the defendant sustained its burden of proof as to its special defense, and indeed the conclusions of the court which are attacked are limited

to this special defense. See *Goldman* v. *Quadrato,* 142 Conn. 398, 402, 114 A.2d 687.

The findings relative to this special defense may be rather briefly summarized: From 1930 to 1960, the defendant maintained five lines of mooring stakes in the river for the use of club members, each line being roughly parallel with the shoreline; the first or most westerly line was about 112 feet out from the westerly shore; the second line was 20 feet east of the first; the third line was 30 feet east of the second; the fourth line was 20 feet east of the third; and the fifth line was 30 feet east of the fourth. The lines ran from a point south of the southern boundary of the defendant's premises, extended, to a point slightly north of the northern boundary of the plaintiff's premises, extended; they thus ran along the entire front of the plaintiff's property. The locations of the lines have been kept about the same through the years by measurements and sightings on known reference points, but the locations of the stakes in a particular line and the distances between stakes have varied with the differing lengths of the boats to be accommodated. The waters in front of the uplands of both parties were worked for many years, up until at least 1947, by oystermen, one of whom was Elijah E. Ball, the plaintiff's lessor and grantor. At these times, the oystermen would order the defendant to remove the stakes, and the defendant usually would comply, but if it did not, the oystermen would pull the stakes up and put them on the shore. The oystermen did not replace any stakes, so the defendant had to, and did, replace them in the spring. This it did without complaint, objection or protest. Furthermore, ice in the river during the winter would remove or break some stakes.

Presently, one line of floating docks takes the place of, and occupies the position of, the second line of stakes. The first or most westerly line of stakes, as well as the third line, has not been replaced, and the fifth line has been replaced as a guard. One other line of docks is contemplated, to take the place of the fourth line of stakes. Since the floating docks, unlike the stakes, rise and fall with the tide, less room is now required in the moorings, about ten feet of mooring space being saved on each boat. The docks are of convenience to the defendant's membership because they eliminate the need of a tender or dingy in going from the defendant's upland to the moored craft. Until the installation of the docks in 1960, the plaintiff made no complaint of the defendant's mooring operations, although during his period of possession and ownership he knew of them.

The real question is whether, on the facts found, the court was compelled to conclude that the defendant had proved its special defense of a prescriptive right to maintain its floating docks for mooring purposes. We are not concerned with any interference with, or acquisition of, any rights of the public in submerged land below the high-water mark; rather we are concerned solely with the claim of this defendant that it had, by prescription, acquired enough of the plaintiff's private littoral rights of wharfing out and access to entitle it to maintain its floating docks.

The court refused to find that the defendant's maintenance of its mooring stakes had been continuous for the statutory period. Such a finding was a prerequisite to the defendant's acquisition of the prescriptive right claimed. *Horowitz* v. *F. E. Spencer Co.*, 132 Conn. 373, 377, 44 A.2d 702; *Mineral*

*Springs Mfg. Co.* v. *McCarthy,* 67 Conn. 279, 286, 34 A. 1043; *Andrzejczyk* v. *Advo System, Inc.,* 146 Conn. 428, 431, 151 A.2d 881; Restatement, 5 Property §§ 457, 459(1). It was a question of fact, on which the defendant had the burden of proof, and we cannot hold, as matter of law, that on the subordinate facts the court was required to conclude that the defendant had sustained its burden. *Andrzejczyk* v. *Advo System, Inc.,* supra; *Dunn* v. *Santino,* 139 Conn. 352, 355, 93 A.2d 726; see *Barrs* v. *Zukowski,* 148 Conn. 158, 165, 169 A.2d 23. This necessarily disposes of the incidental claim made by the defendant that the acts of the oystermen in pulling up the mooring stakes could not affect the continuity of the defendant's user because they were done solely as an incident to the exercise of statutory rights as oystermen. See cases such as *Prior* v. *Swartz,* 62 Conn. 132, 139, 25 A. 398, and *Lovejoy* v. *Norwalk,* 112 Conn. 199, 215, 152 A. 210. In this claim, the defendant confounds the requirement of continuous user with that of uninterrupted user. See Restatement, op. cit., § 459 (1), (2), & comment c. These incidents were an element to be weighed in the defendant's proof of continuous user, which really involves a state of mind. Ibid.; *Connor* v. *Sullivan,* 40 Conn. 26, 30; *Dunn* v. *Santino,* supra. Whether the defendant acquiesced in the removal of the stakes in such manner as to destroy the continuity of its user was a question of fact, and the court was privileged to conclude, as it did, that the defendant had failed to prove that its user had been continuous. Since the defendant failed to sustain its burden of proving continuity of user for the prescriptive period, the special defense failed, and the plaintiff was entitled to a judgment. This makes it unnecessary to consider whether, as the court

held, the defendant's acquisition of the prescriptive rights claimed also failed because the substitution of the floating docks was an extension of the use involved in the maintenance of the lines of mooring stakes, under the rule of cases such as *Phillips* v. *Bonadies,* 105 Conn. 722, 729, 136 A. 684.

Even though the plaintiff failed to prove facts from which the court could assess the monetary amount of his damages, the court was entitled to grant injunctive relief against the defendant's tortious interference with the plaintiff's littoral rights. *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.,* 120 Conn. 168, 176, 180 A. 303.

There is no error.

In this opinion the other judges concurred.