[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
The instant motion was brought to this court on June 1, 1991. The defendant filed two Motions to Dismiss, dated June 7, 1991 and July 8, 1991. The parties agreed that these motions were to be considered in relation to the plaintiff's Third Amended Complaint dated July 15, 1991.
The parties own adjoining parcels of land which lie on Stamford Harbor. An owner of property on the ocean owns in fee to the high water mark. This property is termed "upland".
In 1973 the plaintiff, Connecticut Light and Power Co. (hereafter CLP), permitted the defendant Ponus Yacht Club, Inc. (hereafter Ponus) to use the area below the high water mark of its property. This permission was set forth and renewed at first in writing and then orally. Ponus erected a ramp in one area and then a dock which extended beyond the original area of the grant of permission. In October 1989 CLP informed Ponus that it was terminating the permission. When Ponus failed to remove the ramp and dock, CLP brought this summary process action.
A Motion to Dismiss contests issues of process and the Court's jurisdiction. "`Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. 1 Restatement (Second) Judgment section 11' . . . (E)very presumption favoring jurisdiction should be indulged." Demar v. Open Space and Conservation Commission, 211 Conn. 416, 424. To make findings regarding the court's jurisdiction, the Court held a hearing, took testimony and reviewed documents and maps put into evidence.
The first jurisdictional issue concerns the sufficiency of the Notice to Quit. This Notice was addressed to the Ponus Yacht Club, Inc; to all members of the Ponus Yacht Club, Inc.; to all unknown occupants hereby characterized as John Doe, Jane Doe and all other unknown occupants; and to all unknown marine vessels hereby characterized as unknown boats and all other unknown marine vessels. Since Ponus Yacht Club was among those given Notice, there is a properly named party.
The Notice was dated March 25, 1991. The defendant claims that no date of service appears. The Sheriff's Return bears a stamp below a blank signature line which reads "Dated March 26, 1991, A True Attest", followed by the signature of the constable, underneath which is printed his name and title. A hearing was held on August 20, 1991, at which time the court inquired as to the date of service. The constable stated that it was his practice to put that stamp on his return upon service and that, if the stamp date was March 26, CT Page 7584 that was the date of service.
The complaint was dated May 25, 1991. The defendant claims that since the Complaint alleges a day-to-day agreement, the agreement was renewed between the service of the Notice and the Complaint. The court disagrees.
The Notice to Quit alleges several grounds for termination. The second one claims that no right or privilege existed for Ponus' use of the area where its dock now sits. The third reason claims that the "original right or privilege to occupy said premises not under a rental agreement or lease . . . has terminated. . . ."
This language corresponds to Connecticut General Statute section47a-23 (a)(2) and (3). The latter provides that ". . . an Owner (who) . . . desires to obtain possession or occupancy of any land . . . and when one originally had the right or privilege to occupy such premises other than under a rental agreement or lease but such right or privilege had terminated . . . "may bring a summary process action. (emphasis added)
The defendant states that there is a lack of conformity between the description in the Notice to Quit and that in the Second Amended Complaint (and presumably the Third Amended Complaint dated July 15, 1991) dated July 1, 1991. The descriptions are in substantial conformity in that both make reference to a portion of littoral and riparian areas "outlined in red" on the attached map.
The Court finds that the Notice to Quit is not defective.
The defendant claims that the area involved does not meet the criteria of "land" in Section 47a-23 (a): that littoral and riparian rights do not fall within the ambit of the summary process statutes.
"In its natural state, water is ordinarily regarded as constituting a part of the land in or upon which it is found and therefore as being in the nature of real rather than personal property." 78 Am.Jur.2d section 1. It is a "general term including not only the soil, but everything attached to it, whether attached by the course of nature as trees, herbage, and water, or by the hand of man. . . ." Ballantine's Law Dictionary, Third Edition, 706.
 In our own State it is elementary law: (1) that, subject to the limitations of the Federal Constitution' the State has the jus publicum, or right of governing its shores and navigable waters for the protection of public rights, and also the jus privatum, to title to the soil itself below the high-water mark, in trust for the public use and benefit; (2) that the littoral proprietor owns in fee only to high-water mark, but that he has, in the shore in front CT Page 7585 of his upland, certain exclusive advantages called in our reports rights, privileges, and franchises, among which is the right of access to actually navigable water by wharfing out; (3) that the right or privilege of wharfing out, certainly so far at least as it has not been actually exercised, is held subordinate and subservient to the public right of navigation. Lane v. Harbor Commissioners, 70 Conn. 685, 694, (1898).
Riparian and littoral rights exist as natural and inherent incidents of owning the abutting land. 78 Am.Jur.2d 703. They are alienable and severable.
 ". . . . (R)iparian rights . . . have their source in property ownership and exist only as an original incident of such ownership. They . . . constitute a species of property and are separable from and alienable as thus separated in the same manner as other property." Barri v. Schwarz Bros. Co., 93 Conn. 501, 506 (1919). See also McGibney v. Waucoma Yacht Club, Inc., 149 Conn. 560, 563 (1962)
"The fundamental riparian right on which all others depend is the right of access." Rochester v. Barney 117 Conn. 462, 468 ( 1933) McGibney v. Waucoma Yacht Club Inc. supra at 563.
The defendant relies on Bowman v. Williams, 5 Conn. App. 235
(1985) for the proposition that boat slips do not fall within the ambit of Connecticut General Statute 47a-23. However, the Court believes that reliance to be misplaced. In Bowman, an entry and detainer action, the plaintiff subleased a boat slip from the defendant-sublessor. Later he leased office and storage space for other business purposes from the defendant. The business conducted in the office and storage space was unrelated to the purpose and use of the boat slip. Therefore, the court said that the boat slip was not an appurtenance of the office and storage space leased to the plaintiff because "the boat slip did not pass as an incident to the office space." (at 239). The Court then went on to state that "the theory of wharfing out as an alternative ground was not briefed and therefore not properly before the Court." (at 240).
In the instant case there is no claim by the plaintiff that the boat slip is appurtenant to separately leased office space.
CLP conveyed its right to "wharf out" (Lane v. Harbor Commissioners, supra at 894 ) to Ponus. "The Owner of land adjoining waters in which the tide ebbs and flows has the exclusive right to dig channels and build wharves from his land to reach deep water, so long as he does not interfere with free navigation." Shorehaven Golf Club Inc. v. Water Resources Commission, 146 Conn. 619, 624
(1959) (In McGibney, supra, the defendant Yacht Club attempted to CT Page 7586 justify its erection of floating docks and wharves by the theory of adverse user. The court found that the defendant failed to sustain its burden of proving continuity of user for the prescriptive period and said, "(o)rdinarily, the defendant would have no right, by the erection or maintenance of floats or piers extending in front of the plaintiff's land, to interfere with the plaintiff's right of access and his exclusive right of wharfing out." (at 563).
The nature of the right was termed by CLP to be a revocable license; Ponus referred to it on several occasions as a "lease". The parties semantic choices are not dispositive of the issue. The fact remains that an agreement existed which is "other than . . . a rental agreement or lease" and falls squarely within the statutory provisions of 47a-23 (a)(3).
The court in Jo-Mark Sand and Gravel Co. v. Pantanella,139 Conn. 598 (1953) distinguished between a license and a lease as follows:
 A lease is more than a mere license; it is a contract for the possession and profits of lands and tenements on the one side, and a recompense of rent and other income on the other; or, in other words, a conveyance to a person for life, or years, or at will, in consideration of a return of rent or other recompense." (cites omitted)
A lease transfers an estate in real property to a tenant for a stated period, with a reversion in the owner after the expiration of the lease. Its distinguishing characteristic is the surrender of possession by the landlord to the tenant so that he may occupy the land or tenement leased to the exclusion of the landlord himself. (cites omitted) 601-602.
The court found that the relationship between the parties was not that of a landlord-tenant and therefore found that a summary process action did not lie.
Since that time the Connecticut courts and legislature have provided for the expansion of the summary process procedure.
"No leasehold interest is required for dispossession." Urban v. Prims, 35 Conn. Sup. 233, 234 (1979). Therefore, the fact that the arrangement involved herein is not a lease does not make it dispositive of the matter. "A license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further, whereas a lease gives the right of possession of the land and the exclusive occupation of it for all purposes not prohibited by its terms." 49 Am.Jur.2d 46.
"It is well-established that the summary process statute CT Page 7587 provides landlords with an expedited eviction process that is in derogation of the common law action in ejectment." (Fellows v. Martin, 217 Conn. 57, 63 footnote 8; further cites omitted.) The use of the summary process statutes was formerly limited to a few simple issues. (Southland Corporation v. Vernon, 1 Conn. App. 439,446 and citations therein.)
In 1978 the legislature created the Housing Session of the Superior Court (P.A. 78-365) directing that the Session hear summary process matters and other matters related to landlord-tenant relations. What has developed over the years is an expansion of the Housing Session's jurisdiction to include complex legal and equitable issues.
The matter before this court concerns the rights to possession and occupancy of the use of littoral and riparian rights which are naturally appurtenant to and dependent upon the land of CLP for their existence.
If this court were to deny jurisdiction, CLP could presumably use self-help and, claiming that the defendant has a revocable license, remove the offending docks and ramp. or CLP could bring a common-law writ of ejectment. However, the thrust of the threshold issues would remain: a determination of the plaintiff's right to present use and occupancy encompassed in its exercise of riparian and littoral rights which it holds as the upland owner. This question of possession or occupancy is at the heart of the law of summary process and is properly before the Housing Session.
The defendant has raised other claims in its Motion to Dismiss. It claims that the plaintiff does not have title to the property in the possession of the defendant and is therefore without standing to sue. On the contrary the plaintiff has a right of access from its land inherent in the littoral and riparian rights which it has as a result of its fee ownership of the upland.
The doctrines of laches, waiver and estoppel and the issue of joinder and non-joinder of parties are more properly raised in subsequent pleadings.
For the foregoing reasons, the Motions to Dismiss are denied.
Leheny, J.