[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This summary process action was brought by the Connecticut Light and Power Company (hereinafter "CLP") as Owner seeking possession of its property below the high water mark on Stamford Harbor which is occupied by boat slips owned by the defendant. The following grounds were alleged: lapse of time; no right or privilege to to occupy said premises: the termination of an original right or privilege not under a rental agreement or lease and termination by an express stipulation. The defendant pleaded 16 special defenses and a five-count counterclaim.
The court finds the following facts. The parties own adjoining parcels of land which lie on Stamford Harbor. In 1973 the plaintiff, permitted the defendant Ponus Yacht Club, Inc. (hereinafter Ponus) to use the area below the high water mark of its property without charge. The defendant first wrote to the plaintiff on February 26, 1973 (Exhibit A) seeking permission to use a part of the CLP "waterfront". The letter stated, "(W)e would vacate our property placed thereon at your request, within a specified time dictated by your needs of this area.
The plaintiff replied setting forth certain conditions which the defendant apparently accepted because correspondence in succeeding years showed a pattern of annual renewal which included "the conditions of the lease to be the same as agreed upon." (Exhibit E) The defendant knew it had a temporary use of the area, stating in a CT Page 7225 letter of March 29, 1977, "(I)t is something we appreciate and also to enjoy the use of for so long as Northeast Utilities is willing to let us use this waterfront." (sic) After similar representations in 1977 (Exhibit I) and 1978 (Exhibit K) the parties continued their arrangement and in 1979 agreed that PYC could have a five-year agreement.
During this time PYC made several improvements. Ponus erected a ramp in one area and then a dock which extended beyond the original area of the grant of permission. When a new five-year term was requested, CLP agreed to let the defendant's structures remain in place on a day-to-day basis, subject to the plaintiff's plan to convey the property to the Strand, Ltd. an affiliate of Collins Development Corporation. On January 10, 1990, V. Michael Sinacori, CLP Manager of Real Estate Operations wrote to Thomas Genise, Commander of PYC, informing him that if PYC and the Strand, who were conducting their own negotiations, could not resolve the matter, CLP wanted the structures removed. When Ponus failed to remove the ramp and dock, CLP brought this summary process action.
DISCUSSION
There is no question that CLP extended a right to PYC to use the subject area for docks and ramps. There was no "lease" or rental agreement as that term is defined in General Statutes section 47a-1(i) and as adopted in section 47a-9. There was a series of letters and discussions in which, significantly, the duration of the parties' agreement was modified from a yearly basis to a daily one. Nothing in the correspondence or in the parties' subsequent dealings gave the defendant any permanent right to use and occupy the area at issue. The plaintiff provided the right in 1973 and revoked it. The situation falls squarely within the purview of section 47a-23(a)(3).
The court finds that the plaintiff has met its burden of proof that the defendant "originally had the right or privilege to occupy such premises other than under a rental agreement or lease but that such right or privilege has terminated." Since this ground is dispositive of the matter before the court, the court makes no findings as to the other grounds.
DISCUSSION
The defendant cannot prevail on the special defenses dated March 26, 1992, set forth below, for the reasons which follow.
 A. 8th: The Notice to Quit is defective and not adequate to support the alleged causes of action alleged. (sic)
9th: The complaint was served too long after the Notice to CT Page 7226 Quit deadline and therefore the arrangement between the parties was revived.
10th: The Notice to Quit does not include the date of service.
 11th: The Notice to Quit is not specific as to the reason for termination.
At the heart of the foregoing defenses is a claim that the court lacks jurisdiction. "`Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. 1 Restatement (Second) Judgments section 11' . . .(E)very presumption favoring jurisdiction should be indulged." Demar v. Open Space and Conservation Commission,211 Conn. 416, 424. In response to the defendant's motion to dismiss, the Court held a hearing, took testimony and reviewed documents and maps put into evidence. It issued its memorandum of decision on September 3, 1991. The court reiterates its position.
A valid notice to quit is the condition precedent to a summary process action. O'Keefe v, Atlantic Refining Co., 132 Conn. 613, 622. Broderick v. DuBois, H-963, Berger, J.
The Notice was dated March 25, 1991. The defendant claims that no date of service appears. The Sheriff's Return bears a stamp below a blank signature line which reads "Dated March 26, 1991, A True Attest", followed by the signature of the constable, underneath which is printed his name and title. A hearing was held on August 20, 1991, at which time the court inquired as to the date of service. The constable stated that it was his practice to put that stamp on his return upon service and that, if the stamp date was March 26, that was the date of service. The court finds this defect cured.
The complaint was dated May 25, 1991. The defendant claims that since the Complaint alleges a day-to-day agreement, the agreement was renewed between the service of the Notice and the Complaint. The court disagrees. The notice to quit unequivocally terminated the defendant's rights. A complaint may be brought within a "reasonable time" after the notice to quit. O'Keefe v. Atlantic Refining Co., supra at 622.
The Notice to Quit alleges several statutory grounds for termination. The third reason claims that the "original right or privilege to occupy said premises not under a rental agreement or lease . . . has terminated. . . ." This language corresponds to Connecticut General Statute section 47a-23(a)(3). It is the ground on which the court finds the plaintiff has met its burden of proof.
The language of the notice to quit is adequate to support the cause of action. Several other reasons have been advanced by the CT Page 7227 defendant in its motion to dismiss and its motion to strike which it has incorporated by reference, together with all other pleadings in its trial brief of June 10, 1992. The court's decisions on these issues are unchanged. The notice to quit is not defective and the court has jurisdiction in this matter.
 B. 1st: Summary Process is not appropriate based upon the allegations of the complaint in this action.
 4th: There is no landlord-tenant relationship between the parties and therefore this Housing Court is without jurisdiction to hear this case.
 5th: Riparian and littoral rights do not fall within the ambit of our Summary Process Statutes.
 6th: Plaintiff does not have any real estate in the possession of the Defendant, and therefore has no standing to bring this action.
 12th: There is nothing tangible to which this court can restore immediate possession to the Plaintiff.
13th: Summary Process does not lie to terminate a license.
 15th: Plaintiff's remedy, if it has any, is a lawsuit in Superior Court to determine its littoral and riparian rights, if any.
The defendant claims that the area involved does not meet the criteria of "land" in Section 47a-23(a): that littoral and riparian rights do not fall within the ambit of the summary process statutes. "In its natural state, water is ordinarily regarded as constituting a part of the land in or upon which it is found and therefore as being in the nature of real rather than personal property." 78 Am.Jur.2d section 1. It is a "general term including not only the soil, but everything attached to it, whether attached by the course of nature as trees, herbage, and water, or by the hand of man. . . ." Ballantine's Law Dictionary, Third Edition, 706.
"In our State it is elementary law . . . that the littoral proprietor owns in fee only to high-water mark, but that he has, in the shore in front of his upland, certain exclusive advantages called . . . rights, privileges, and franchises, among which is the right of access to navigable water by wharfing out; Lane v. Harbor Commissioners,70 Conn. 685, 694. Riparian and littoral rights exist as natural and inherent incidents of owning the abutting land. 78 Am.Jur.2d 703. They are alienable and severable. ". . .(R)iparian rights . . . have their source in property ownership and exist only as an original incident of such ownership. They . . . constitute a species of property and are CT Page 7228 separable from and alienable as thus separated in the same manner as other property." Barri v. Schwarz Bros. Co., 93 Conn. 501, 506. See also McGibney v. Waucoma Yacht Club, Inc., 149 Conn. 560, 563. "The fundamental riparian right on which all others depend is the right of access." Rochester v. Barney, 117 Conn. 462, 468; McGibney v. Waucoma Yacht Club, Inc. supra at 563.
CLP conveyed its right to "wharf out" to Ponus. Lane v. Harbor Commissioners, supra at 894. "The Owner of land adjoining waters in which the tide ebbs and flows has the exclusive right to dig channels and build wharves from his land to reach deep water, so long as he does not interfere with free navigation." Shorehaven Golf Club, Inc. v. Water Resources Commission, 146 Conn. 619, 624 (1959) In McGibney, supra, the court said, "(O)rdinarily, the defendant would have no right, by the erection or maintenance of floats or piers extending in front of the plaintiff's land, to interfere with the plaintiff's right of access and his exclusive right of wharfing out." (at 563).
The nature of the right involved in this case was termed by CLP to be a revocable license; Ponus referred to it on several occasions as a "lease". The parties semantic choices are not dispositive of the issue. The fact remains that an agreement existed which is "other than . . . a rental agreement or lease" and which falls squarely within the statutory provisions of 47a-23(a)(3).
The court in Jo-Mark Sand and Gravel, Co. v. Pantanella,139 Conn. 598 (1953) distinguished between a license and a lease as follows:
 A lease is more than a mere license; it is a contract for the possession and profits of lands and tenements on the one side, and a recompense of rent and other income on the other; or, in other words, a conveyance to a person for life, or years, or at will, in consideration of a return of rent or other recompense." (cites omitted)
A lease transfers an estate in real property to a tenant for a stated period, with a reversion in the owner after the expiration of the lease. Its distinguishing characteristic is the surrender of possession by the landlord to the tenant so that he may occupy the land or tenement leased to the exclusion of the landlord himself. (cites omitted) Id. 601-602.
"No leasehold interest is required for dispossession." Urban v. Prims, 35 Conn. Sup. 233, 234 (1979). Therefore, the fact that the arrangement involved herein is not a lease does not make it dispositive of the matter. "A license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further, whereas a lease gives the CT Page 7229 right of possession of the land and the exclusive occupation of it for all purposes not prohibited by its terms." 49 Am.Jur.2d 46.
The use of the summary process statutes was formerly limited to a few simple issues. Southland Corporation v. Vernon, 1 Conn. App. 439,446 and citations therein. In 1978 the legislature created the Housing Session of the Superior Court directing that the Session hear summary process matters and other matters related to landlord-tenant relations. P.A. 78-365. What has developed over the years is an expansion of the Housing Session's jurisdiction to include complex legal and equitable issues.
The matter before this court concerns the rights to possession and occupancy of the use of littoral and riparian rights which are naturally appurtenant to and dependent upon the land of CLP for their existence. The allegations are appropriately made within the context of a summary process action. Section 47a-23 does not require the existence of a landlord-tenant relationship between the parties. Furthermore, there is no merit to the defendant's 12th special defense. There is no requirement in section 47a-23 that there be "something tangible" to which the plaintiff can obtain possession. Littoral and riparian rights exist in the proverbial bundle of sticks that makes up real property.
 C. 3rd: The Plaintiff has failed to join all necessary and indispensable parties in this lawsuit.
 "Parties have been characterized as `indispensible' when they `not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final termination may be wholly inconsistent with equity and good conscience.' (citations omitted). Necessary parties, however, have been described as `persons having an interest in the controversy, who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy . . . (B)ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties.'" (citations omitted), Sturman v. Socha, 191 Conn. 1.
The court finds that although the State has title to property below the high water mark, its rights are not affected by the outcome of this decision. Since the court can only determine the issue of possession as between the parties, the State's interest in the area below the upland will remain unchanged and unaffected. Similarly the Secretary of the Army and the Army Corps of Engineers CT Page 7230 are not necessary parties nor is the National Oceanic and Atmospheric Administration. They have no rights to be adjusted in this controversy. The ends of substantial justice will be served without their appearance.
 D. 2nd: The Plaintiff is barred by the doctrines of waiver, laches, and estoppel.
 16th: . . . An "eviction" of the Defendant would work a forfeiture wholly disproportionate to any injury that could be claimed, if any by the Plaintiff.
Ponus argues that equitable considerations protect it from eviction. It claims that the doctrines of waiver, laches and estoppel prevent the plaintiff from obtaining possession.
"`Waiver is the intentional relinquishment of a known right.'" Novella v. Hartford Accident and Indemnity Co., 163 Conn. 552, 561. Waiver requires that there be both knowledge of the existence of the right and the intention to relinquish it. Id. at 562. Nothing in the correspondence submitted or the testimony can be construed as a waiver of CLP's right to possession. The very fact that the agreement became a day-to-day right says loudly and clearly that CLP intended to have the ability to recover the property swiftly.
Nor is the plaintiff estopped to assert its right to possession. A "claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act in that belief: and the other party must change its position in reliance on those facts, thereby incurring some injury. Zoning Commission v. Lescynski, 188 Conn. 724, 731. The defendant failed to submit evidence that rises to the level of misleading conduct. That the parties have had negotiations to resolve their disputes is a matter of record but there is no evidence that CLP caused Ponus to change its position on the basis of any representations of the plaintiff.
The defense of laches also fails. Laches requires proof that there has been an inexcusable delay that has prejudiced the defendant. It does not arise from "mere lapse of time." Haggerty v. Parniewski, 11 Conn. App. 37, 40. The fact that time passed between CLP's first request for possession if October 1989 and the commencement of this action is not sufficient to meet the requirement. Throughout this period the parties negotiated. There was no evidence that CLP'S failure to file suit in late 1989 or early 1990 prejudiced the defendant. To the contrary, Ponus collected another 2 to 3 years worth of dockage fees without paying CLP.
The defendant also claims that the court must find for the CT Page 7231 defendant on the equitable doctrine against forfeiture. It cites the Supreme Court's holding in Fellows v. Martin, 217 Conn. 57 that equitable relief can be granted where one party suffers a loss "wholly disproportionate to the injury to the other party" and such injury is reparable by money rather than forfeiture of the tenancy. Id, 66, 69.
The facts point to PYC's loss of substantial revenue should it be dispossessed. It has a total of 72 slips 40 of which are in the area at issue. Members are charged for the slips at the rate of $18 per linear foot. Since the boats range from 16 feet to 42 feet the funds paid by the members are a good source of revenue. Members pay these fees in February for the season which runs from April 15 to November 15. In addition, PYC provides winter storage for which it receives slip fees. The defendant invested approximately $24,000 in building the docks with member labor. It presently has 300 members who pay $100 in membership fees. PYC has no other significant sources of revenue aside from its membership dues and slip fees.
Any injury suffered by PYC is self-induced. It was unable to expand with its own property. It enjoyed prosperity using CLP's riparian area. CLP received no remuneration. Now PYC seeks to exact compensation for the loss of that which it would not have had but for the plaintiff's largesse despite notice that CLP could revoke the right.
The Fellows court did not provide that "any and all equitable considerations" could be raised in a summary process action but only those "equitable defenses and counterclaims implicating the right to possession." Id, at 664, fn. 9 Such would occur where the defendant would still have a right to possession but for a minor breach of the agreement which could be remedied by payment. The right to possession is not implicated here by the equitable defenses and counterclaims. The defendant cannot prevail on its equitable claims.
In support of its claim of a retaliatory eviction the plaintiff asserts that the parties and Collins Development were negotiating the matter of CLP's right of way unrelated to littoral or riparian rights. It argues that the plaintiff's "complaint is retaliatory, arbitrary, (and) in bad faith. . . ." The reliance on the defense of retaliatory eviction is misplaced. None of the conditions listed in Section 47a-20, Chapter 830 are present here. Furthermore, Chapter 830 does not pertain to commercial agreements. Hoban v. Masters,36 Conn. Sup. 611, 613. The negotiations of the parties to a matter which the defendant admits is unrelated to the issue of possession is irrelevant.
D. 14th The Plaintiff has conspired with Collins Development CT Page 7232 Co. to deprive Ponus of its rights under state and federal law in violation of Title 42 section 1983 of the United States Code.
The defendant failed to brief this special defense and it is deemed abandoned.
 E. 7th: The Defendant has not interfered with any right of the Plaintiff to access deep water and has not "landlocked" the Plaintiff.
The Plaintiff makes no claim that it is "landlocked". It merely wants possession of its riparian and littoral rights.
The theories of the defendant's first three counterclaims are based upon the negotiations engaged in by the parties with regard to a matter that the defendant admits is unrelated to the issue of possession. Summary process is aimed at deciding the simple question of who is entitled to possession. Urban v. Prims, supra at 236; Yarbrough v. Demirjian, 17 Conn. App. 1, 3. (1988). Even were there, as alleged in the Fourth Count of the counterclaim, a breach of good faith and fair dealing by the plaintiff, it would have no bearing on the grounds that the defendant's right to possession under an arrangement other than a rental agreement was terminated. The CUTPA claim in the Fifth Count was not argued or briefed and is deemed abandoned.
For the aforementioned reasons, the court finds judgment for possession shall enter in favor of the plaintiff of the grounds of section 47a-23(a)(3).
LEHENY, J.